J. W. WOOD & Co., Respondents, v. W. E. HALL, GARNISHEE OF R. A. LOVE, Appellant.

Kansas City Court of Appeals, June 30, 1886.

1. MORTGAGE—WHEN INVALID AS TO CREDITORS, UNDER SECTION 2496, REVISED STATUTES—WAIVER OF INVALID PROVISIONS.—Although a mortgage is invalid as to the *creditors* of the mortgagor, when it gives him the right to the *possession* of the stock of goods mortgaged, with the power to sell, etc., being in violation of section 2496, Revised Statutes ; it is, *notwithstanding* the illegal provisions, binding and valid between the mortgagor and mortgagee, and the parties to the mortgage have the right to *waive* and not to enforce those provisions. And the mortgagee might, with the *consent* of the mortgagor, take possession of the mortgaged goods, at any time before a *creditor of or purchaser from* the mortgagor had acquired rights to the stock of goods, with the same result. And if the possession is not taken with the *consent* of the mortgagor, but *against* his consent—as by an action of replevin, on the ground that the condition of the mortgage had been broken—it has the *same effect* as possession obtained by the mortgagor's consent. And possession thus taken cures the mortgage of the illegality.

2. COURTS OF APPEALS—TRANSFER OF CAUSE TO SUPREME COURT—

CONSTRUCTION OF SECTION SIX, OF AMENDMENT TO STATE CONSTITU-
TION, CREATING THIS COURT.—Under section six (6) of the amend-
ment to the constitution of this state, creating this court, where
the decision of either of the courts of appeals is in *accordance* with
the *last* previous ruling of the supreme court, on any question of
law or equity, there is no authority for such court of appeals to cer-
tify and transfer the cause and transcript therein to the supreme
court, because said decision may be in conflict with a *prior* ruling
of the supreme court, which has not been expressly overruled. The
*last* ruling of the supreme court is binding on both courts of appeals,
and a decision by either of such courts, in *accordance* with such
ruling, is the decision which must be rendered.

APPEAL from Jasper Circuit Court, HON. NOAH M.
GIVAN, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is a proceeding of garnishment on execution,
against Hall, as garnishee of Love. A general execution
was issued from the circuit court, on May 9, 1881, in
favor of the plaintiffs against Love, and on May 10, 1881,
Hall was summoned as garnishee on said execution, to
appear at the June term, 1881, to answer interrogatories.
On the eighteenth day of June, 1881, to the usual inter-
rogatories filed by plaintiffs, the garnishee answered, de-
nying all indebtedness, etc.

The plaintiffs' denial of the garnishee's answer, so
far as it is material to here state, was as follows:
" * * * that at the time of the service of the
garnishment on defendant Hall, he (defendant Hall) had
in his possession and under his control in Webb City,
Mo., a large stock of drugs, drug furniture, druggist's
sundries, oils, paints, fancy goods, notions, books,
paper, tobacco and cigars, and the proceeds thereof, the
property of defendant Love, of the value of three thous-
and dollars; that defendant Hall got and took posses-
sion of said stock of drugs, etc., under a pretended
mortgage, which said mortgage was fraudulent and void
as to the creditors of said R. A. Love; that said mort-

gage is of date ———, 1879, and is recorded in the recorder's office of Jasper county, Missouri, at page —, that said mortgage was, and is, fraudulent and void in this: that it provides that said Love shall remain in possession of said stock of drugs, etc., and sell the same at retail in the usual course of trade, and provides that said Love shall replenish and keep up said stock of drugs, etc., out of the sale therefrom, and further allows said Love to appropriate the proceeds from the sale thereof to his own use; and plaintiffs say that said Love, with the knowledge and consent of said Hall, did sell said stock of drugs, etc., at retail in the usual course of trade and appropriate the proceeds of said sale to his (Love's) own use and benefit; that said mortgage attempts to cover all additional and future acquired stock in replenishing and keeping up said stock of drugs, etc. That the debt for which plaintiffs obtained judgment against said Love was for goods, wares and merchandise bought by said Love on credit and placed in said stock of drugs, etc., and that a large proportion of said merchandise so bought was still in and with said stock of drugs, etc., undisposed of, when said Hall, forcibly took and got possession of said stock of drugs, etc., on the —— day of May, 1879. That said Hall knew that said Love was appropriating the proceeds of sales therefrom to his own use and benefit; that said Hall, since taking possession of said stock of drugs, etc., has sold and converted all of said stock of drugs, etc., and has the proceeds thereof in his hands. Plaintiffs pray judgment against defendant Hall for the amount of said judgment and costs and interest thereon."

The garnishee Hall replied to this pleading, denying each and every allegation therein contained.

The case was tried before the court without a jury.

For the purposes of this report we state the mortgage was as averred in the denial filed by plaintiffs to the garnishee's answer.

In May, 1879, Hall, the garnishee, took possession of the stock of goods in controversy as mortgagee, by means of a writ of replevin. The replevin suit was decided in his favor. For the purposes of this report it may be stated that Hall still had possession of said stock of goods at the time that he was summoned as garnishee.

For the plaintiffs the court declared the law to be, "that the mortgage from Love to Hall, read in evidence, is void as to creditors of said Love, and the finding should be for plaintiffs."

From a judgment accordingly rendered in favor of plaintiffs the garnishee has appealed to this court.

PHELPS & BROWN, with JOSEPH CRAVENS, for the appellant.

I. The instructions for the plaintiffs *assumed* that the mortgage executed by Love to Hall, was void on its face, because it permitted Love to remain in possession of the mortgaged property and sell the same. The court erred in thus instructing, as the mortgagor was not permitted to sell or dispose of the goods *for his own use*, but was required to apply the proceeds of such sales to the payment of the debts secured by the mortgage. *Metzner v. Graham*, 57 Mo. 404. The cases of *Brooks v. Wiener* (20 Mo. 503), *Stanley v. Bunce* (27 Mo. 269), and *Billingsley v. Bunce* (28 Mo. 547), are distinguishable.

II. Where a chattel mortgage is given to secure a debt and the mortgagee takes *actual* possession under his mortgage, before any creditor of the mortgagor has acquired rights to the mortgaged property, the *invalidity* of the mortgage *before possession taken by* the mortgagee is wholly immaterial. *Greely v. Reading*, 74 Mo. 309 ; *Nash v. Norment*, 5 Mo. App. 545 ; Jones Chatt. Mort. sect. 178.

III. The mortgage was valid *between the parties*, and the stipulations permitting the mortgagor to remain in possession and sell, did not render it void on its face,

VOL. xxiii—8

*even as to creditors. Brooks v. Wiener,* 20 Mo. 503; *Metzner v. Graham,* 57 Mo. 404; *Greeley v. Reading,* 74 Mo. 309.

IV.   There can be no judgment against the garnishee until judgment against principal debtor. Sect. 2531, Rev. Stat. ; Drake Attach. (4 Ed.) sect. 460.   A garnishing creditor has no greater right than his debtor against the garnishee.   Waples on Attachments & Garnishments, 194 ; *Nat. Bk. Mo. v. Staley,* 9 Mo. App. 146.

V.   The garnishee's possession must be of such a character as to give the principal debtor the right to recover possession as owner ; if *he* cannot regain his own, the garnishing creditor cannot reach a third party who is in possession.   Waples Attach. & Garn. 195 ; *Hathaway v. Russell,* 16 Mass. 473.   *Under no circumstances shall a garnishee be placed in a worse condition than he would be in if the action was being prosecuted by the principal debtor himself.*   Drake on Attach. (3 Ed.) sects. 451, 452.

CRITTENDEN & McDOUGAL, for the respondents.

I.   Where a conveyance of chattels provides that the grantor may not only retain possession of the things conveyed, but continue to sell and dispose of them in the ordinary course of business, *using the proceeds,* it is held void on its face as a conveyance to the grantor's use.   10 Cent. L. Journal, 281 ; *Weber v. Armstrong,* 70 Mo. 217 ; *Lodge v. Samuel,* 50 Mo. 204 ; *Billingsley v. Bunce,* 28 Mo. 547 ; *Zeigler v. Maddox,* 26 Mo. 475 ; *Robinson, Exec'r, v. Robards,* 15 Mo. 460.

II.   Judgment against the principal debtor was sufficiently shown by the introduction of the execution as *prima facie* evidence of the existence of the judgment. The court had judicial knowledge of the judgment against the principal debtor, when it entered the judgment against the garnishee on the pleadings.   The law presumes the rightful performance of duty by its officers. The motion for a new trial does not call the attention of

the court to the fact that there was no evidence of a judgment rendered against the principal debtor.

III.   A person engaged in traffic and indebted cannot make a valid conveyance in favor of one creditor, by which he shall possess a lien on all the chattels, which the debtor shall, from time to time, have on hand, allowing the latter to purchase and sell like an unqualified owner, the lien attaching only to what may be on hand at the time it is sought to be enforced. *Edgell v. Hart*, 9 N. Y. 217 ; *Mittnacht v. Kelly*, 46 How. Pr. Rep. 458; *Wood v. Lowry*, 17 Wend. (N. Y.) 492.

IV.   This mortgage is void under section 2496, Revised Statutes, as the mortgagor not only remained in possession of the goods, but also used and consumed them, in paying family expenses, etc., and this with the mortgagee's knowledge and consent.   This brings the deed in antagonism to the rights of creditors. *Lodge v. Samuels*, 50 Mo. 204.   The terms of the instrument had been so changed and modified by the contracting parties as to subject it to the imputation of fraud in fact and in law, when involving the rights of other creditors of the mortgageor.

V.   *Upon the evidence*, the court was justified in giving the plaintiff's and refusing the garnishee's instructions, as those given declare the law upon the only material point in the case, *i. e.*, the validity of the mortgage.   All other points were secondary and of no importance to the issue, as fraud utterly subverts whatever is built upon it.

PHELPS & BROWN, and CRAVENS, in reply.

I.   The mode of proof of a judgment is by the production of the record, or an exemplified copy thereof. Freeman on Judgments, sects. 407, 408 ; 1 Greenleaf on Evid., sect. 501.

II.   The mortgage is not void on its face.   The sale and disposal of the property was not for his own use,

but to be applied to discharge of debts secured by it. *Metzner v. Graham*, 57 Mo. 404.

III. It is admitted that if Love had voluntarily turned over the goods to Hall (garnishee), then the question of the validity of the mortgage would not arise. The *taking actual possession of the goods* is the true ground, and is as effectual as if they had been turned over *voluntarily* by the mortgagor. *Greeley v. Reading*, 74 Mo. 309.

HALL, J.—For the purposes of this case, we shall assume that the chattel mortgage executed by Love to Hall the garnishee, was, as to the creditors of Love, void, on account of the power therein conferred upon Love to retain possession of the stock of goods, and to sell the same in the usual course of trade, etc.

But how does the invalidity of the chattel mortgage benefit the plaintiffs, under the facts of this case?

The mortgage was invalid as to the mortgagor's creditors because it was to his use, and, therefore, in violation of section 2496, Revised Statutes. The mortgage was to his use because it gave to him the right to the possession of the stock of goods, with the power to sell the same, etc. Had the mortgagor, immediately upon the execution of the mortgage, waived those provisions of the mortgage made for his use, and turned over the possession of the stock of goods to the mortgagee, would the mortgage have been invalid simply because it retained those provisions uncancelled? We think not. The retention of the stock of goods by the mortgagor was the very basis of the invalidity of the mortgage. Without such possession, the mortgagor could not have exercised the power to sell in the usual course of trade, etc. Had the mortgagor so transferred the possession of the stock of goods, there would have been nothing upon which the invalidity of the mortgage could have rested. By such transfer of the possession of the stock of goods

all illegality would have been eliminated from the mortgage.

The mortgage was, notwithstanding the illegal provisions referred to, binding and valid, between the mortgagor and mortgagee. The illegal provisions, had they been enforced, would have vitiated the mortgage as to creditors of or purchasers from the mortgagor. But, surely, the parties to the mortgage had the right to waive and not to enforce those provisions. Had those provisions never been complied with, had the parties to the mortgage treated the mortgage as if it had not contained those provisions, had the parties to the mortgage in their acts obeyed, and not violated, the law, the mortgage would have been binding upon all.

It would not require a separate and distinct agreement between the mortgagor and the mortgagee, authorizing the mortgagor to take possession of the stock of goods as security for, or in satisfaction of, the mortgage debt. *Greeley v. Reading*, 74 Mo. 309; *Nash v. Norment*, 5 Mo. App. 545; Jones on Chattel Mortgages, sect. 178, and cases cited. The mortgage would have been binding upon all, had it not been for the illegal provisions. The parties to the mortgage could have cured it of the illegality by expressly eradicating therefrom the illegal provisions. They could also have effected the same cure by ignoring those provisions. Did the possession of the mortgage depend upon the illegal provisions of the mortgage, such possession, of course, would be illegal, and then it could properly be said that the possession could be no better than the warrant under which the possession was taken. But the possession of the mortgagee, in the case supposed, would be against and in conflict with the illegal provisions of the mortgage. Said possession would stand, not upon the illegal provisions of the mortgage, but in disregard of them. Had the mortgagor retained possession of the stock of goods his possession would have rested upon the illegal provisions, and he could not, by any conduct of his, have made his

possession better than the warrant by means of which he held such possession.

The result would have been the same had the mortgagee, with the consent of the mortgagor, taken possession of the mortgaged goods at any time before a creditor of, or purchaser from, the mortgagor had acquired rights to the stock of goods.

In this case, the garnishee, who was the mortgagee, took possession of the stock of goods long before the plaintiffs acquired any right thereto. The possession, however, was not taken with the consent of the mortgagor. The mortgagor opposed the taking of such possession. But the possession was obtained by operation of law, in an action of replevin, on the ground that the conditions of the mortgage had been broken, and that the garnishee was, therefore, entitled to such possession. Possession thus obtained must have the same effect that possession obtained with the consent of the mortgagor would have had. The possession was taken in accordance with the terms of the mortgage. The conditions of the mortgage upon which the illegal provisions rested had been broken, and those provisions were as completely rescinded and eliminated from the mortgage as they could have been by the consent of the mortgagor. The mortgagor had forfeited all right to the benefit of the provisions of the mortgage made for his own use. Possession taken by the mortgagee, with the consent of the mortgagor, would have cured the mortgage of the illegality. Possession taken by the mortgagee, in accordance with the terms of the mortgage, on account of the forfeiture of the mortgagor's right to possession, also cured the mortgage of the illegality.

In this case, there was no pretense of any actual fraud on the part of the garnishee. The action of the court was based wholly upon the constructive fraud arising from the illegal provisions of the mortgage. Under the facts of this case, in our opinion, the judgment should have been in favor of the garnishee.

Since writing this opinion I have for the first time seen the case of *Dobyns v. Meyer* (20 Mo. App. 67), decided by the St. Louis court of appeals. The court expresses the opinion in that case that the views herein set forth are erroneous, and are at variance with the well settled rule in this country outside of this state. The rule referred to is the rule laid down with so much force by Ryan, J., in *Blakeslee v. Rossman* (43 Wis. 116). The St. Louis court of appeals felt constrained, by the force of the opinion of the supreme court of this state, in *Greeley v. Reading*, *supra*, to render judgment in accordance with the views expressed in this opinion. But, on account of the case of *Armstrong v. Tuttle* (34 Mo. 432), which seems to be in direct conflict with *Greeley v. Reading*, and which was not expressly overruled in the latter case, and which might, therefore, have been overlooked by the supreme court, and on account of the importance of the question involved, and in order that the question might be authoritatively settled by the supreme court, the original transcript in *Dobyns v. Meyer* was certified to the supreme court for final determination. This action was had under section six, of the amendment to the constitution of this state, creating this court, which provides that "When any one of said courts of appeals shall, in any cause or proceeding, render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any of said courts of appeals, or of the supreme court, the said court of appeals must, of its own motion, pending the same term, and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the supreme court, and thereupon the supreme court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process ; and the last previous rulings of the supreme court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals."

Under said section, it seems to us, that where the

decision of either of the courts of appeals is in accordance with the last previous ruling of the supreme court on any question of law or equity, there is no authority for such court of appeals to certify and transfer the cause and transcript therein to the supreme court, because said decision may be in conflict with a prior ruling of the supreme court, which has not been expressly overruled. The last ruling of the supreme court is binding upon both courts of appeals, and a decision by either of such courts, in accordance with such ruling, is the decision which must be rendered.

We feel called upon to make these remarks as explanatory of our action in not transferring the transcript in this case to the supreme court.

In view of the conflict between the different courts of this country, and the conflict in the views entertained by the appellate courts of this state, upon the subject under discussion, we cannot but feel a doubt as to the correctness of our conclusion. But, after mature consideration and reflection, we have arrived at that conclusion, and, for the reasons given, adhere to it as correct.

The judgment is reversed and the cause remanded. All concur.