STRAUS, *Appellant*, v. ROTHAN *et al.*

**Personal Property : EXECUTION : PRIORITIES : STATUTE.** Section 2353 of the Revised Statutes of 1879, providing that personal property shall in all cases be subject to execution for the purchase money, and shall in no case be exempt therefrom except in the hands of an innocent purchaser and without notice of the existence of such prior claim for the purchase money, is a statute of exemption only and not one creating a lien or regulating priorities between creditors.

*Certified from St. Louis Court of Appeals.*

AFFIRMED.

*Fred. Wislizenus* for appellant.

(1) Revised Statutes, 1879, section 2353, does not create a vendor's lien. *Norris v. Brunswick*, 73 Mo. 256; *Haworth v. Franklin*, 74 Mo. 106. The lien theory rests wholly on a *dictum* in *Parker v. Rodes*, 79 Mo. 91. (2) Even if a vendor has a lien under this statute it does not follow that it can be exercised under the circumstances of this case. Here the special creditors have no judgment and, of course, no execution. Their right vests merely on an attachment subsequent to that of appellant. Section 2353 gives the vendor this right, whatever it be, on judgment and execution, not on attachment prior to any judgment

*Mills & Flitcraft* and *Geo. R. Lockwood* for respondents.

The vendor or personal property may, under section 4914, Revised Statutes, 1889 ( R. S. 1879, sec. 2353 ), seize such property by attachment and subject the same to the satisfaction of his judgment and execution when obtained, to the exclusion of a general creditor, although

the attachment of such general creditor may be prior in point of time. *Parker v. Rodes*, 79 Mo. 191; *State to use v. Mason*, 96 Mo. 127; *Mill Co. v. Turner*, 23 Mo. App. 103; *State to use v. Orahood*, 27 Mo. App. 496; *O'Connor v. Alexe*, 28 Mo. App. 184; *Boyd v. Furn. Co.*, 38 Mo. App. 210.

BRACE, J.—This cause is certified here by the St. Louis court of appeals, on its judgment reversing the judgment of the circuit court of St. Louis, overruling appellant's motion to require the sheriff to pay appellant the proceeds of sales made by him under attachments against Rothan & Co.

The facts of the case are thus stated in the opinion of the court of appeals: "The plaintiff sued out an attachment against Isaac L. Rothan and Isaac Rothan, Jr., composing the mercantile firm of Rothan & Co., on various grounds, which need not be stated, and caused the same to be levied on stock and fixtures of the defendants on the thirtieth of August, 1888. Soon thereafter, several other creditors of Rothan & Co. sued out attachments against them, and pointed out to the sheriff specific property on which this plaintiff's attachment had already been levied, and directed the sheriff to make special levies on such property, as being property which these attaching creditors had sold to Rothan & Co., and which had not been paid for by the latter. The property was subsequently sold by the sheriff, and the plaintiff, having prosecuted his demand to judgment, made a motion for a rule on the sheriff requiring him to pay over the proceeds of the sale to the plaintiff, as a prior attaching creditor. This motion was resisted by the subsequent attaching creditors, by whose direction the sheriff had made the special levies for unpaid purchase money, and on the hearing of it they offered to show, in substance, that the goods, on which the special levies had been made by their direction, were part of a large lot of goods which had been sold

by them to Rothan & Co., and that the purchase price therefor had not been paid. The court admitted this evidence, and the plaintiff excepted. Thereupon the court overruled the plaintiff's motion, deciding that the special levies for unpaid purchase money, though subsequent in date to the plaintiff's levy, were superior to it in right.''

The determination of the issue hangs upon the proper interpretation of section 2353, Revised Statutes, 1879, page 393, which reads as follows: ''Personal property shall in all cases be subject to execution on a judgment against the purchaser for the purchase price thereof, and shall in no case be exempt from such judgment and execution, except in the hands of an innocent purchaser for value without notice of the existence of such prior claim for the purchase money.''

This section is an act passed in 1874, as amended in the revision of 1879. As originally enacted and approved March 31, 1874 (Laws of 1874, p. 118), it is entitled, ''An act to amend chapter 160 of the General Statutes of Missouri by adding a section thereto, to be numbered section 80,'' and reads as follows: ''Sec. 80. In all cases of the sale of personal property, the same shall be subject to execution against the purchaser on a judgment for the purchase price thereof, and shall in no case be exempt from such judgment and execution for the purchase price, as between the vendor, his assignee, heir or legal representative and purchaser.'' The chapter 160, General Statutes, 1865, page 639, thus amended, is entitled ''of executions,'' and sections 8, 9 and 11 of that act designate the property of an execution debtor that shall be exempt from ''attachment and execution.''

The evident intent of the legislature, by the amendatory act of 1874, was to take out of the exemptions allowed a debtor by the original act such of his personal property as otherwise might have been exempt from attachment or execution, when the execution is on

a judgment for the purchase money for such personal property. It was not the intention of the legislature to impress upon the personal property a lien in favor of the vendor of such property, but to provide that, if upon execution issued upon a judgment for the purchase money, such property was found still the property of the execution debtor, he should not be permitted to claim and hold it as exempt from sale as against the vendor's execution for the purchase money.

The act of 1874 first came before this court for construction in 1880 in the case of *Norris v. Brunswick*, 73 Mo. 257, where the issue was between an execution creditor for the purchase money of some billiard tables and a purchaser of the tables from the execution debtor before levy, in which the issue is stated, and decided thus : "It is contended by the defendants that under the act of March 31, 1874, the property was subject to a judgment for the purchase money even though the transfer to the plaintiff was not fraudulent. * * * This statute did not in our opinion give a lien on the thing sold, so as to bind it in the hands of any person to whom it might be transferred, but its only effect was to prevent the purchaser from claiming such property as exempt from execution." This ruling was followed in *Haworth v. Franklin*, 74 Mo. 106, and in *Parker v. Rodes*, 79 Mo. 88 ; while these cases were all decided after the passage of the act of 1879, yet they were all cases arising under the act of 1874, and turned upon the construction of that act only, and whatever may have been said in either of them as to the revised act was *obiter dicta*.

The evident defect upon the face of the law of 1874 was that under it a debtor holding personal property not paid for, and therefore not exempt from execution for the purchase money which his creditor was seeking to recover by judgment and execution, could make transfer of such property to another and retain other property which he could claim as exempt, and thus evade

its provisions ; to remedy this defect so far as might be, without interfering with the rights of innocent parties dealing in good faith with the debtor, seems to have been the object of the amendment of 1879, whereby a purchaser from such debtor was precluded from setting up the absolute right of such debtor to dispose of such property as against the vendor's execution for the purchase money, unless he bought in good faith without notice that the purchase money was unpaid.

In view of the fact that the subject-matter being dealt with in these enactments was a debtor's exemptions ; that the evident purpose was simply to make an exception to those exemptions, and in view of the policy of the legislature as manifested in the legislation of the period ( R. S. 1879, secs. 2505 and 2507 ) to prohibit everything like secret rights in or liens on personal property for the unpaid purchase money where possession was delivered to the vendee, we cannot think it was the intention of the legislature by the amendment of 1879 to confer upon the vendor of personal property delivered to the vendee, but which had not been paid for, either a lien upon such property or any priority of right therein on attachment or execution over other attachment or execution creditors ; the only advantage that could have been intended to the execution creditor for unpaid purchase money, over other creditors, was the incidental one growing out of his right to subject to sale under his execution property in the hands of his debtor, or in the hands of a purchaser from him with notice that the purchase money was unpaid, which other creditors of the same debtor could not subject to sale under their executions because as to the latter it was absolutely exempt from sale.   The rights of other attachment or execution creditors in these enactments were evidently not in the legislative mind ; the only subjects of contemplation were the vendor as execution creditor, the vendee as execution debtor, and the personal property in his possession for which the purchase money had

not been paid, or in the possession of some one else who had acquired it from the vendee, and the thing determined was, to subject such property to the vendor's execution for the purchase money, but in the latter case not even to do this, if the purchaser from the debtor vendee acquired the property in good faith without notice that the purchase money was unpaid.

That this is the true scope and meaning of this legislation, we think there can be little doubt, for can it be supposed for a moment that the legislature, when legislating upon the question of exemption, intended incidentally to strike down and practically nullify the policy which it was then inaugurating ( when legislating directly upon the subject ) of inspiring confidence that, in all sales of personal property when possession was delivered to the vendee, as to creditors and purchasers the vendor's title must be held to have been absolutely passed, unless upon the public registry books of the land there appear in the manner provided by law some reservation of a right therein, as manifested by the amendment to section 10 of chapter 107, General Statutes, 1865, passed in 1877, and carried into the Revised Statutes of 1879 as section 2505, and by the passage at the same session of section 2507, *supra*, which ever since have remained a part of the statute law of the state ; after the passage of these laws, it might well have been thought that credit could safely be extended to one in the possession of personal property upon the faith of his being its owner, nothing to the contrary appearing upon the public records.

But if the construction placed upon this exemption act by the trial court in this case be correct, and therein is to be found a *quasi* vendor's lien or creditor's priority, or preference or whatever it may be called, in favor of the vendor for the purchase money which enables him to take personal property by levy of his writ of attachment or execution for the unpaid purchase money out from under the prior levy of such a writ by

a creditor whose debt was created on the faith of the apparent absolute ownership of the goods by the debtor, with which the vendor had clothed him, then this legislation will have been to a great extent futile and the business and commerce of the state will continue to be afflicted with the very mischiefs it was intended thereby to guard against, and of which an apposite illustration is given in the following language of the court of appeals in this case: "It is probable that nearly all the seasonable goods in the mercantile stocks in this state are purchased on longer or shorter credits, and that every wholesale and retail store is to a large extent filled with goods, the purchase price of which has not been paid. The possessors of the goods, by means of their possession, trade actively and acquire credit. A banker seeing a merchant in the possession of a large stock of seasonable goods doing an active and apparently lucrative trade, extends credit to him by discounting his paper; suddenly grounds of attachment are discovered and the banker attaches the goods to save his debt. He finds that he has got nothing. The goods although in the possession of the owner as stock in trade, the stake held out by him to the world on which he secured credit, are all held by distant creditors by means of secret strings which they are at liberty to pull at any time."

Similar illustrations might be drawn from every branch of business and from every walk of life. Such a construction of the statute cannot be correct. There is no equity in it. The language of the act does not imperatively demand it, and the whole policy of the law on the subject forbids it, for it cannot be supposed, that the legislature was with one hand laying a substantial foundation of business credit, and with the other tearing it up.

It finds no support in the cases hereinbefore cited, the only color of authority found for it in them being the *obiter* of the judge in *Parker v. Rodes*, *supra*, in

speaking of section 2353, *supra* (which did not govern
in that case), that "under this statute the vendor of per-
sonal property, who had obtained a judgment against
the vendee, might seize the property on execution in
the hands of a purchaser thereof with notice that the
purchase price had not been paid, and it would probably
authorize the vendor under circumstances justifying a
suit by attachment against the vendee to seize such
property in the hands of a third person purchasing with
notice that the property had not been paid for." This
*dictum* was cited, however, in *State to use of Comfort
v. Mason*, 96 Mo. 127 ; and in that case an attachment
in favor of a vendor suing the surviving partner of a
firm for the purchase money, levied upon the goods
sold, was sustained as against the claim of the admin-
istrator of the partnership effects, who had taken pos-
session of and inventoried them before the levy of the
attachment, apparently solely upon its authority.    And
in *Bolckow Mill Co. v. Turner*, 23 Mo. App. 103, upon
the authority of the same *dictum* a junior attachment
for the purchase money was given priority over prior
attachments of general creditors, and in the recent case
of *Boyd v. Furniture Co.*, 38 Mo. App. 210, the St.
Louis court of appeals with apparent reluctance held
"that a levy on property under an execution issued
upon a judgment against a purchaser for the purchase
price of the property takes precedence over other prior
levies on the same property."    The court in its opin-
ion said : " We are free to say that, if the question was
one in the consideration of which we were unembarrassed
by previous rulings of the supreme court, we might
possibly hold that the case at bar, while strictly within
the letter, is not within the spirit or equity of the
statute," and at the ensuing term, while adhering to
the ruling in *Boyd v. Furniture Co.*, certified this case
here, stating in the opinion :   "All the members of the
court still feel much doubt upon the question, and in

view of the great importance to a commercial community of having the question definitely and speedily settled by the only tribunal which can finally settle it, whether this statute is a statute of priorities among creditors, or a mere statute of exemption in the case where a creditor has obtained a judgment and execution, we have concluded that we exercise our power most wisely by adhering to our former decisions, stating again the grounds thereof, and by certifying the case to the supreme court for final determination in pursuance of the constitutional mandate."

Without now stopping to inquire whether the ruling of this court in *Comfort v. Mason*, and the court of appeals in *Bolckow v. Turner*, and in *Boyd v. Furniture Co.*, are legitimate deductions from the *dictum* in *Parker v. Rodes*, they are evidently the fruits of it, and if we are correct in the construction we now put on section 2353, after maturely considering it on a direct issue between creditors claiming under it, holding it to be a statute of exemptions and not one conferring a lien, or priority as between creditors, it follows that the doctrine of those cases cannot stand, and they ought no longer to be held as authority on the proper construction of that section of the statute in this respect. It also follows that the like ruling in this case of the St. Louis court of appeals for the purpose of obtaining the opinion of this court thereupon is not sustained. This conclusion renders it unnecessary to inquire into or discuss the further ruling of the court of appeals which resulted in the reversal of the judgment of the circuit court, as, for the reasons herein stated, the judgment of the St. Louis court of appeals reversing the judgment of the circuit court of St. Louis and remanding the case must be affirmed.

The case will, therefore, be remanded to the St. Louis court of appeals to be disposed of in accordance with the views expressed in this opinion. All concur.