Barton v. Sitlington.

---

BARTON *et al.* v. SITLINGTON, *Appellant.*

Division Two, April 12, 1895.

1. **Chattel Mortgage**: FRAUD: STATUTE. A mortgage of chattels is void, as against creditors, where it shows on its face that the mortgagee is to retain possession and dispose of the goods in the usual course of business. (R. S. 1889, sec. 6159).

2. ———: ———: QUESTION FOR JURY. Where the mortgage is not void on its face and the extrinsic evidence introduced on the issue of its fraudulent character is conflicting, the question is one for the jury under proper instructions.

Barton v. Sitlington.

3. ———: ———: ORAL AGREEMENT: POSSESSION BY MORTGAGEE. Though it is orally agreed between the mortgagor and mortgagee that the former shall retain possession of the mortgaged chattels and sell them in the usual course of business, yet the mortgagee's title will be good as against other creditors, if he takes actual possession before the rights of the latter attach.

4. ———: ———: POSSESSION BY MORTGAGEE. Nor is any other consent on the mortgagor's part requisite to such possession by the mortgagee than the authority contained in the mortgage itself to take possession in case of default in the payment of the secured debt or if the mortgagee should consider himself insecure.

5. ———: PART OF DEBT FRAUDULENT: CREDITORS. Where any part of a debt secured by a mortgage is fraudulent as to creditors, the whole debt is thereby tainted and subsequent possession by the mortgagee of the property will not cure the defect.

6. Chattel Mortgage: FAILURE TO RECORD: FRAUD: CREDITORS. The failure to record a chattel mortgage does not make it fraudulent as to the mortgagor's creditors, unless before it is recorded or before the mortgagee takes possession thereunder, third persons are induced to give credit to the mortgagor believing his property to be free from incumbrance.

7. ———. A clause in a chattel mortgage that it shall cover all merchandise that may subsequently be added to the mortgagor's stock is valid and the mortgagee acquires a valid lien by taking possession under the mortgage before the rights of other creditors intervene.

8. ———: AGREEMENT AS TO EXCESS: CREDITORS. An agreement contained in a chattel mortgage that the excess arising from a sale of the property after paying the debt shall be paid to the mortgagor, does not render the transaction fraudulent as to creditors.

9. Personal Property: VENDOR: EXEMPTION: STATUTE. A lien is not created in favor of the vendor of personal property by Revised Statutes, 1889, section 4914, which declares that such property shall not be exempt from execution or judgment for the purchase price thereof, except in the hands of an innocent purcaser for value without notice of any prior claim; said statute being one of exemption merely . (*Straus v. Rothan,* 102 Mo. 261).

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Stuart Carkener* and *Lathrop, Morrow, Fox & Moore* for appellant.

(1) The court erred in giving a peremptory instruction to find for plaintiffs. Where the evidence tends to show fraud in fact as by permission to remain in possession and sell without accounting for and paying proceeds on debt secured, the question should be submitted to the jury. *Hisey v. Goodwin*, 90 Mo. 368; *Weber v. Armstrong*, 70 Mo. 221; *State, etc., v. Mason*, 112 Mo. 382; *Van Raalte v. Harrington*, 101 Mo. 608. (2) "It has been held by a long and unbroken line of appellate court decisions that, when it appears on the face of a mortgage conveying personal property that the mortgagor is to retain possession of the property and to sell and dispose of it for his own benefit, that such mortgage is void as to creditors, on the ground that such conveyance is deemed in law for the use of the mortgagor, and for that reason is void under the statute." *Robinson v. Robards*, 15 Mo. 459; *Brooks v. Wimer*, 20 Mo. 503. And numerous other cases. *Smith v. Ham*, 51 Mo. App. 436. (3) "If the mortgage was made in part—not only to secure the mortgagees but to assist the debtor in hindering and delaying his other creditors in the collection of their debts—it was void *in toto* under the well settled law of this state." *Masse v. Algermissen*, 25 Mo. App. 188; *Strohm v. Hayes*, 70 Ill. 41. (4) The mortgages were not good as to the future purchases. Plaintiffs could not replevin as to them. *France v. Thomas*, 86 Mo. 84; *Wright v. Burcher*, 72 Mo. 186; *Petring v. Chrisler*, 90 Mo. 655. (5) The possession taken by Barton Brothers did not cure the fraudulent character of the mortgages. Wherever there is a question of actual fraud or fraud in fact, a possession taken does not cure the transaction. *Boland v.*

*Ross,* 120 Mo. 217; *McKinney v. Wade,* 43 Mo. App. 157. (6) "It is not in the power of the mortgagee to remove the original taint of the mortgage, and make it good, by taking so much of the property as has not been sold, into his possession under and by virtue of the mortgage." *Gallagher v. Rosenfield,* 50 N. W. Rep. 697; *Stein v. Munch,* 24 Minn. 390; Wait on Fraud. Conv. [2 Ed.], sec. 357. (7) There was no legal process by which the creditors could reach the surplus and make it available for the payment of their debts and the mortgage was thereby rendered fraudulent. *Bigelow v. Stringer,* 40 Mo. 208; *Hanna v. Finley,* 33 Mo. App. 651. (8) The construction placed on Revised Statutes, 1889, section 4914, in *Straus v. Rothan,* is too narrow and should be reviewed.

*Karnes, Holmes & Krauthoff* for respondents.

(1) The rule is now established that it is the function and duty of a trial court to direct a verdict in all cases where it would have been warranted in setting aside a verdict for the adverse party. 2 Thompson on Trials, sec. 2250; *Morgan v. Durfee,* 69 Mo. 469; *Powell v. Railroad,* 76 Mo. 80; *Lenix v. Railroad,* 76 Mo. 86; *Landis v. Hamilton,* 77 Mo. 554; *Jackson v. Hardin,* 83 Mo. 175; *Carroll v. Interstate, etc., Co.,* 107 Mo. 653; *Reichenbach v. Ellerbe,* 115 Mo. 588, 595; *Wolff v. Campbell,* 110 Mo. 114. (2) This rule having been applied in the present instance, the case is here, with a finding by the trial court that it is without any element of actual fraud. The rule with reference to such an issue is not peculiar; actual fraud must be proved; it can not be conjectured; and when the trial court has ruled that there is no sufficient proof of it, a verdict was properly directed accordingly. *Priest v. Way,* 87 Mo. 16; *Bent v. Lewis,* 88 Mo. 462; *Robinson*

*v. Dryden*, 118 Mo. 534; *Ring v. Ring*, 12 Mo. App. 88; 2 Thompson on Trials, sec. 1935. (3) The transaction was rendered free from the taint of fraud by Barton Brothers taking possession of the mortgaged property prior to the institution of any legal proceedings by any other creditor. Jones on Chat. Mort. [4 Ed.], secs. 178, 424; *Nash v. Norment*, 5 Mo. App. 545; *Greeley v. Reading*, 74 Mo. 309; *Petring v. Chrisler*, 90 Mo. 649; *Dobyns v. Meyer*, 95 Mo. 132; *McIntosh v. Smiley*, 107 Mo. 377; *Boland v. Ross*, 120 Mo. 208; *Howell v. Caryl*, 50 Mo. App. 440. (4) No one can object to a failure to record a mortgage unless he has been misled thereby into extending credit to the mortgagor. *Waite v. Mathews*, 50 Mich. 392; *Kay v. Noll*, 20 Neb. 380. (5) Having taken possession, the mortgagee completed his lien, and could recover the property by replevin proceedings from one subsequently seizing it. *Keating v. Hannenkamp*, 100 Mo. 161; *Thompson v. Foerstel*, 10 Mo. App. 290; *Gregory v. Tavenner*, 38 Mo. App. 627. (6) A clause reserving the surplus to the mortgagor, in no way affects the mortgage. Jones on Chat. Mort. [4 Ed.] 353; *Douglas v. Cissna*, 17 Mo. App. 44; *Hargadine v. Henderson*, 97 Mo. 375. (7) When an honest debt is secured and the mortgage recorded or possession taken (which is the equivalent) the tendency is to uphold the transaction. *Etheridge v. Sperry*, 139 U. S. 266; *St. Louis, etc., v. Rubelman*, 15 Mo. App. 280.

BURGESS, J.—On the twelfth day of September, 1891, and for six or seven years next preceding that date, one Jesse Swim was a merchant engaged in the retail shoe business in Kansas City, Missouri, operating two stores, one at 1125, and the other at 521, Main street. At the same time plaintiffs, composing a copartnership and doing business under the name and

style of Barton Brothers, were engaged in conducting in said city a wholesale shoe business. Swim was largely indebted on merchandise to various creditors in a sum total of about $26,000, a large portion of which was past due, and he was being hard pressed for payment by some of his creditors. He owed plaintiffs $13,500; Hathaway, Soule & Harrington, $8,000; the Bank of Commerce, $3,000; Kirkendall, Jones & Company, $500, and small amounts to other creditors. Swim also owned large real estate properties in Kansas City, but they were mortgaged for as much as they were worth.

Swim had executed to Barton Brothers a number of notes falling due at different times, and, they becoming uneasy with respect to his solvency, one of the firm called upon him and demanded that their claim should be secured by chattel mortgage on his stocks. To this, Swim assented, with the understanding and agreement, as he testified, that he was to have fifteen thousand dollars standing credit in the house, to secure which he was to execute to plaintiffs an *additional* chattel mortgage on his stocks. He also testified that he was to continue in the possession of the goods and sell them in the usual course of trade, and to account to Barton Brothers for proceeds of sale, less expense, and that by agreement the mortgages were not to be placed of record, unless other creditors of Swim proceeded against him to collect their debts, or took some steps which were likely to jeopardize the claim of plaintiffs. These statements were all denied by plaintiffs.

The mortgages were executed, and, on the thirtieth day of October, 1891, Barton Brothers demanded of Swim possession of the goods, which he refused, and they then at once had their mortgage, given to secure past indebtedness, placed of record, and obtained possession of the goods, including goods bought by Swim

from Hathaway, Soule & Harrington of the value of about $8,000, which they knew had not been paid for, and obtained possession by action of replevin.

Swim's purpose in making the mortgage, and plaintiffs' in accepting the same, was that they, plaintiffs, should be preferred over other creditors of Swim.

After Barton Brothers had taken possession of the property and Swim had executed further chattel mortgages to Kirkendall, Jones & Company and the National Bank of Commerce of Kansas City, a conference between the parties interested was held, and an agreement was made by which Barton brothers should hold possession of the property to secure the debts due to themselves, Kirdendall, Jones & Company, and the Bank of Commerce, respectively, payment to be made, from the sale of the goods of the creditors, in the order named. Adkins, selected by the bank, was to act with Carr, selected by Barton Brothers, in selling and disposing of the property, and Swim was to be employed as a salesman at $80 per month.

Adkins was sent for, and, in the presence of all parties, was advised of the arrangement and intrusted with the property. On the next day the arrangement thus outlined was committed to writing. The plaintiffs' witnesses testified that Swim assented to the arrangement; Swim himself admits that he acquiesced therein. When asked to sign the agreement, on the following day, after the arrangement therein outlined was being carried out, he declined, for the reason that it did not provide that he should have the management of the property. At the time plaintiffs obtained possession of the goods they were estimated to be worth from $30,000 to $35,000.

While plaintiffs were in possession of the goods, Swim, on the sixth day of November, 1891, confessed judgment in favor of Hathaway, Soule & Harrington,

for $7,833.65, being for the purchase price of a part of the goods in controversy, had an execution issued on the same day, directed and delivered to the defendant sheriff of Jackson county, Missouri, who, on the eleventh day of January, 1892, levied it upon the same goods, with some others. Plaintiffs then brought this action and replevied from defendant the goods levied upon by him under said execution.

At the close of the evidence the court instructed the jury to find for plaintiffs, and refused all instructions asked by defendant. From the judgment rendered in favor of plaintiffs, defendant appealed.

The mortgages involved in this controversy were not void as a matter of law. There is nothing upon their face that would indicate that they were executed for the use or benefit of the mortgagor; but defendant's insistence is that the court erred in peremptorily instructing the jury to find for plaintiffs, for the reason that there was sufficient evidence of fraudulent intent on the part of Swim, and participation therein on the part of Barton Brothers, to have required the court to submit that question to the jury. This contention is predicated mainly upon the evidence of Swim, who testified that, under the arrangement between himself and Barton Brothers, made at the time of the execution of the mortgage, he was to continue his business afterward just as he had done before, and that the mortgages were intended for quick action on the part of plaintiffs whenever his other creditors pressed him too hard, and that he did in fact continue to buy goods from other people, and conduct the business just as he had been doing by and with the knowledge and consent of plaintiffs, and that they agreed that he should do so.

Admitting the evidence of this witness to be true, it does not show that the mortgages were actually fraudulent, that is, that they were fraudulent but that

they were constructively or legally so by force of the statute prescribing and defining constructive or legal fraud. A mortgage of a stock of merchandise is void upon its face, as a matter of law, when it appears therefrom that the mortgagor is to remain in the possession of the goods and sell them in the usual course of business, for the reason that it is for his own use and benefit, and comes within the inhibition of section 5169, Revised Statutes, 1889, which declares every conveyance of goods and chattels, in trust, to the use of the person making such conveyance to be void as against creditors, existing and subsequent, and purchasers. *Bullene v. Barrett*, 87 Mo. 185; *White v. Graves*, 68 Mo. 218; *Weber v. Armstrong*, 70 Mo. 217; *Lodge v. Samuels*, 50 Mo. 204; *Hubbell v. Allen*, 90 Mo. 574.

Even if the mortgages in this case were not void upon their face as a matter of law; yet, if the same facts were shown, by extrinsic evidence, that would render them void upon their face, and there was any substantial conflict in the evidence as to the facts and circumstances tending to show the existence of fraud, then it became the duty of the court to submit to the jury, under proper instructions, those facts, and to tell them, if they were shown to be proven to their satisfaction, that they must find the conveyance to be fraudulent and void as against creditors, unless, it further appeared from the evidence that the mortgagees in good faith took actual possession of the goods prior to their seizure under legal process at the instance of Hathaway, Soule & Harrington, and continued to hold the same. Under such circumstance the goods could not be attached, or seized under execution at the instance of another creditor, and it makes no difference as to what the understanding or agreement, between the mortgagor and mortgagee may theretofore have been by which the

mortgagee was to remain in possession of the goods and dispose of them in the usual course of business.

Before the levy of the execution, Barton Brothers had taken possession of the stocks of merchandise under their mortgages, and, even though it be true that Swim was to remain in possession and sell the goods in the usual and ordinary course of trade, the mortgages were valid between the parties, and whatever parol agreement, for which there was no consideration, may have existed between them was subordinate thereto, and abrogated by taking possession by the plaintiffs, although done by legal process. *Dobyns v. Meyer*, 95 Mo. 132; Jones on Chattel Mortgages [3 Ed.], sec. 178; *Hewson v. Tootle*, 72 Mo. 632; *Petring v. Chrisler*, 90 Mo. 650; *Cameron v. Marvin*, 26 Kan. 612; *McIntosh v. Smiley*, 107 Mo. 377.

But it is insisted by defendant that where a mortgage is fraudulent in law, or constructively so, it can not be validated as against creditors, even though possession be taken of the mortgaged property by the mortgagee before the rights of such creditors have intervened, *unless the possession be taken by and with the consent of the mortagor*, and that, as no such consent was given in this case, the mortgages were void, and the court should have so instructed the jury.

This position is, however, not tenable. By the express terms of the mortgages it was provided that, in case of default in the payment of any of the notes therein described, or any part thereof, or if the mortgagees should consider themselves unsecure, they might take possession of any part or all of said merchandise, and the taking possession under an order of delivery, issued in the action of replevin instituted by the plaintiffs to obtain possession under the mortgages, was but a taking by and with an agreement entered into by the mortgagor, and was all that was necessary. Jones on

Chattel Mortgages [3 Ed.], sec. 164a; *Gagnon v. Brown*, 47 Kan. 83; *Joseph v. Boldridge*, 43 Mo. App. 333; *Wood v. Hall*, 23 Mo. App. 110; *Mitchell v. Black*, 6 Gray, 100.

If any part of the indebtedness from Swim to plaintiffs was fraudulent, merely trumped up, as it were, for the occasion, in order to cover up the goods and keep them from Swim's creditors, that would have rendered void the entire transaction, and taking possession by plaintiffs, by and with Swim's consent or otherwise, would not have purged the transaction of fraud and would have been of no avail. *Boland v. Ross*, 120 Mo. 208; *State ex rel. v. Hope*, 102 Mo. 410.

But the *bona fides* of the indebtedness secured by the mortages in this case has not been called in question.

Another contention is that the mortgages were withheld from record by an agreement between plaintiffs and Swim, and by reason thereof were void as against Hathaway, Soule & Harrington, who were creditors of Swim. It is somewhat difficult to see the force of this contention when it is considered that the goods were sold on May 5 and July 28, 1891, while the mortgages were executed on the twelfth day of September thereafter, one of the mortgages placed on record and the goods taken possession of by plaintiffs under said mortgages on the thirtieth day of November, 1891. Now, if the mortgages had been executed before the goods were sold to Swim, had been kept from record, and by reason thereof Hathaway, Soule & Harrington had been induced to give Swim credit, believing that his stocks of goods were clear of any incumbrance, then they would have been fraudulent against them. But how can it be claimed that Swim obtained credit by reason of default or negligence on the part of plain-

tiffs with respect to said mortgages, which were not executed until some months after the credit was given?

The law is thus stated by Jones on Chattel Mortgages [3 Ed.], sec. 337a: "But no one can complain of a failure to file a chattel mortgage for any length of time, unless after its date, and before its filing, or before the mortgagee takes possession under it, the creditor assailing it has dealt with the mortgagor as he would not have dealt had the mortgage been recorded." See, also, *Johnson v. Stellwagen*, 67 Mich. 10.

Moreover, the mortgaged property was taken possession of by the mortgagees under the mortgages before the rights of Hathaway, Soule & Harrington intervened, which relieved the mortgages of any imputation of fraud.

With respect to the provisions in the mortgage including all merchandise which might thereafter be added to, or become a part of, said stocks, or which might be placed in said places of business at 521 and 1125 Main street, such provisions were valid both as between the parties to the mortgages and as against creditors (Jones on Chattel Mortgages, secs. 94, 95), and the taking possession of such property by the mortgagees under the authority given in the mortgages before the rights of other creditors had intervened, created a valid lien on such property. Jones on Chattel Mortgages, secs. 164–168; *Keating v. Hanenkamp*, 100 Mo. 161; *Moody v. Wright*, 13 Met. 17.

A still further contention is that the mortgaged property was excessive security, and, as it was provided by the mortgages that the excess arising from a sale of the goods after paying the debts secured thereby should be paid to the grantor, that they were to that extent at least for his use and benefit, and void as against his creditors. We are not prepared to give our assent to this contention. It does not seem reasonable that the

mortgages should be invalidated upon the ground alone that they provided for the disposition of the excess in precisely the same way that it would have been disposed of in the absence of any such provision, or the rights of intervening creditors, that is, paid over to the grantor; nor do we think such is the law. "Other creditors are not in any legal sense hindered, delayed, or defrauded by such a transaction. They may sue notwithstanding, and reach the residuary interest of the mortgagor by attachment and execution, or by bill in equity." Jones on Chattel Mortgages [3 Ed.], sec. 353; *Douglass v. Cissna*, 17 Mo. App. 44; Burrill on Assignments [4 Ed.], secs. 206, 207.

It follows from what has been said that there was no evidence of fraud, in so far as plaintiffs were concerned, that would have authorized the court to submit that question to the jury, and that it did not commit error in refusing to do so.

But one other question remains to be disposed of, and that is whether or not Hathaway, Soule & Harrington were entitled to have the merchandise, which they had sold to Swim, and which plaintiffs knew had not been paid for at the time of the execution of the mortgages by Swim to them, in which said merchandise was included, subjected to the payment of their debt for the purchase price under the execution issued in their favor against Swim, and which said execution was levied by defendant as sheriff upon said goods then in the possession of plaintiffs? It is argued by defendant that under section 4914, Revised Statutes, 1889, the goods were subject to the payment of their debt, even in the hands of plaintiffs under their mortgage. That section reads as follows: "Personal property shall in all cases be subject to execution on a judgment against the purchaser for the purchase price thereof, and shall in no case be exempt from such judgment and execution,

except in the hands of an innocent purchaser, for value, without notice of the existence of such prior claim for the purchase money."

In order to sustain defendant's position it must be held that Hathaway, Soule & Harrington had, under the statute, a lien for the purchase price of the goods remaining unpaid, which they could enforce against the goods in the hands of plaintiffs, who had notice that the goods were purchased by Swim from them and that the purchase money, or some part thereof, remained unpaid. This statute has been before this court for construction on several different occasions, and, while the decisions are quite inharmonious, the later adjudications are to the effect that it is merely a statute of exemptions, and not one creating a lien in favor of a vendor of personal property. It was so held in *Straus v. Rothan*, 102 Mo. 261, after an elaborate review of all the authorities, and that case was followed and approved in *Brownell & Wight Car Co. v. Barnard*, 116 Mo. 667. We have no doubt of the correctness of the conclusions reached in those cases.

The premises considered, the judgment is affirmed. All of this division concur.