## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1908.

---

*(Continued from Volume 131)*

---

## BARBEE & COMPANY, Appellant, v. CRAWFORD et al., Respondents.

### St. Louis Court of Appeals, May 26, 1903.

1. **FRAUDULENT CONVEYANCES: Innocent Purchaser.** Where the owner of a stock of goods and a business sold them under a contract which provided that he could retake the property on the failure of the purchasers to comply with the contract, and where the seller did retake the property under the terms of the contract, he was not liable in an action at law for a bill of goods sold to the purchasers while they were in charge of the business, in the absence of proof that he knew when he retook the goods that the goods so purchased were not paid for.

2. ————: ————. Section 3170, Revised Statutes 1899, providing that personal property shall be subject to execution on a judgment against the purchaser for the purchase price and shall in no case be exempt except in the hands of an innocent purchaser for value without notice, does not authorize a money judgment in an equitable proceeding, against the purchaser of a stock of goods, for a bill of goods bought before he purchased, without his knowledge that such goods were not paid for. The statute did not vest a lien in the seller of the goods whereby he could pursue the same in the hands of an innocent purchaser. The purpose of the statute is to except from the force of the exemption law personal property which has not been paid for.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. W. Corbett* for appellant.

(1) This suit was to recover the purchase price for the goods sold to the firm of Crawford & Carter. And the first and main question is, "Can the defendant, M'Elvain, who claims to have had a mortgage on the business of Crawford & Carter, in the Climax Saloon, be termed an innocent purchaser, for value to such an extent as to defeat plaintiff's suit for purchase money?" Wine Co. v. Rinehart, 42 Mo. App. 171. (2) Plaintiff's further contention is that defendant, McElvain, committed fraud against this plaintiff in putting defendants Crawford & Carter, in possession of the saloon, to do business in their own name, with every show of thrift and solvency, when in fact, they were insolvent, and the defendant, McElvain, failed to record, had secreted, or hid from view, an iron-clad instrument in writing, which terms were impossible of fulfillment on the part of Crawford & Carter, and which at any moment, upon a condition broken, he could repossess the saloon, with all its stock, and all money derived from the sales, thereby deluding plaintiff into selling their goods on credit to Crawford & Carter. R. S. 1899, sec. 3412; McDonald & Co. v. Hoover, 142 Mo. 484; Landis v. McDonald, 88 Mo. 335.

*Duncan & Bragg* for respondents.

A general judgment could not be obtained against respondent, McElvain, based upon a sale and delivery of merchandise to the firm of Crawford & Carter answerable out of his own estate, in the absence of an instrument in writing, signed by him, to pay off and discharge said liability if the firm aforementioned should fail so

to do. R. S. 1899, sec. 3418. Where a debtor has tangible and visible property, which is within the jurisdiction of the State, and subject to attachment or other legal process, a court of equity cannot lend its aid, legal remedies not being exhausted. Pendleton v. Perkins, 49 Mo. 565.

GOODE, J.—Prior to December 9, 1904, defendant J. M. McElvain had been conducting a saloon in the city of Caruthersville. On said day he sold the wines and liquors and good-will of the business to defendants Geo. C. Crawford and Herbert C. Carter, who thereafter, until July 7, 1905, conducted it under the firm name of Crawford & Carter. The contract of sale was in writing and by its terms the purchasers assumed and agreed to pay as it matured, all the indebtedness of the saloon, paid McElvain $500 cash and executed and delivered to him eight promissory notes of one hundred dollars each, falling due in succession every thirty days after the date of the sale. As security for the discharge of the indebtedness the saloon owed and of the notes, the writing provided for the deposit in the Bank of Caruthersville to the credit of the "Climax Saloon" of all the cash received for sales, except such as was needed to pay running expenses. In case of failure of the purchasers to comply with the conditions of the contract by paying the notes and the indebtedness at maturity, the contract should become null and void and the property revest in McElvain. This instrument was not put to record until July 7, 1905, on which day McElvain repurchased the saloon from Crawford & Carter. Between the date of the sale by McElvain to Crawford & Carter on December 9, 1904, and the re-sale to McElvain on July 7, 1905, plaintiff corporation had sold Crawford & Carter liquors to the amount of $170.44. These sales occurred in April and June, 1905, and the liquors remained unpaid for at the time of the

resale to McElvain in July, and some remnants of them were acquired by McElvain by said sale. Such being the facts, plaintiff filed an action in the circuit court of Pemiscot county on October 7, 1905, to recover from George C. Crawford and Herbert C. Carter, as partners doing business under the firm name of Crawford & Carter, and from McElvain, the value of the goods sold by plaintiff to Crawford & Carter. The petition alleges first the incorporation of plaintiff company under the laws of Kentucky, the sale of the merchandise to Crawford & Carter, April 29th and June 10, 1905, gives items of goods sold, says the prices charged are reasonable and remained due and unpaid, though Crawford & Carter had agreed to pay. The petition then states the facts substantially as we have given them regarding the sale of the saloon to Crawford & Carter by McElvain and the terms of the sale as shown in the written contract, which is called a chattel mortgage. The provisions are recited which require the deposit of sales in the Bank of Caruthersville to the credit of the Climax Saloon for the satisfaction of its indebtedness and the notes executed to McElvain; also the proviso that if Crawford & Carter failed to comply with their agreement the saloon should become the property of McElvain. It is alleged the agreement was not recorded until July 7, 1905, and as soon as it was recorded the property was immediately taken charge of by McElvain. It is alleged next that between the two sales, Crawford & Carter purchased on credit considerable goods and merchandise which they put into their business, including the goods purchased of plaintiff, and when McElvain took charge, said goods passed into his possession, he having full knowledge at the time the purchase money for plaintiff's goods remained unpaid. The concluding portion of the petition is as follows:

"Plaintiff charges that the sale of said saloon to G. C. Crawford and H. C. Carter, on the 9th day of

December, 1904, was a fraud, that the withholding of the written agreement of that date from the records was a fraud, that the defendants knew that the compliance with the terms of said agreement upon the part of Crawford and Carter under the then existing circumstances was impossible, that to have placed same upon record would have given notice to the plaintiff not to have credited said Crawford & Carter.

"Plaintiff states that it is advised and believes, and so charges, that the transaction as aforesaid between these defendants was fraudulent from beginning to end, and that the defendant, J. M. McElvain, is the principal beneficiary of said fraud.

"Wherefore the premises considered, plaintiff prays judgment for the amount of his account, to-wit, the sum of one hundred and seventy dollars and forty-four cents ($170.44) and interest from date of demand, to-wit, ——— day of ———, 1905. Plaintiff prays for any and all further relief not herein specifically prayed for that the facts in its case may entitle it to, and plaintiff ever prays."

The answer consists of some immaterial admissions and a general denial of the averments of the petition. After the introduction of evidence the case was submitted to the court; which gave judgment for plaintiff against defendants Crawford and Carter, who had not answered, and for McElvain; and from this judgment plaintiff appealed, contending it was entitled to judgment against McElvain, as well as Crawford and Carter.

We are not clear as to the nature of this action. If it is to be regarded as one at law, we must dispose of it by an affirmance, for the reason that no declarations of law were requested and the evidence is far from uniform in favor of plaintiff's contentions of fact. The very gist of such a legal proceeding would be knowledge on the part of McElvain, when he repurchased the

saloon stock from Crawford & Carter, that a portion of it had been bought from plaintiff but not paid for. There is little, if any, evidence to prove McElvain knew these facts, and certainly the evidence pointing to knowledge is not strong enough to cause us to disturb the judgment. The weight of the evidence, if not all of it, conduces to prove the transactions between McElvain on one side and Crawford & Carter on the other, were bona fide. When the firm defaulted in its payments to McElvain, he might have demanded the saloon property under his contract. But instead of doing this he paid them the fair prices of what goods they then had on hand; and really we have been unable to detect any evidence in the record which seriously inclines to prove he knew anything about their indebtedness when he bought them out.

Regarding the case in its legal aspects, it is plain it could not be maintained as an action at law against McElvain, except by proof that his dealings with Crawford & Carter were collusive, and entered into to enable said firm to buy goods on credit and transfer them to him without paying for them; thereby enabling him to get the goods of other people for nothing. Likely an action would lie for such a fraud; but as the legal remedy is adequate, it would necessarily be an action at law; and, as said, in the absence of declarations, we would abide by the conclusion of the court below.

The theory of recovery put forward in the brief for plaintiff, is based on section 3170 of the Revised Statutes (1899); which says personal property shall in all cases be subject to execution on a judgment against the purchaser for the price, and in no case shall be exempt from the judgment and execution, except in the hands of an innocent purchaser for value, without notice of a prior claim for the purchase money. Counsel for plaintiff argues that McElvain took the stock from Crawford & Carter for an antecedent debt and there-

fore was not a purchaser for value in the sense of the section; and if he knew part of the stock had been bought by Crawford & Carter from plaintiff, but not paid for, then plaintiff, by virtue of said statute, may recover its value from him. Plaintiff might be able to seize its property under execution or writ of attachment in the hands of McElvain if he was not an innocent purchaser for value. As to this we do not decide, for nothing of the kind was attempted; but we incline to think such an action would not lie under the circumstances of this case by mere force of said statute, if McElvain acquired the property in good faith and to secure himself. [Finke & Nasse v. Pike, 50 Mo. App. 564; Straus v. Rothan, 102 Mo. 261, 14 S. W. 940; Brownell Car Co. v. Barnard, 116 Mo. 667, 22 S. W. 503; Barton v. Sitlington, 128 Mo. 164, 176, 30 S. W. 514.] The relief sought, according to counsel, is a money judgment against McElvain in an equity proceeding, on the ground that his vendors Crawford & Carter were insolvent, and he had acquired plaintiff's goods from them for an antecedent debt, knowing they were insolvent and owed for the goods. As said, the evidence goes to show a sale in good faith to McElvain, in which he paid Crawford & Carter cash for their stock, besides surrendering some unpaid notes they owed him. We know of no principle of equity which will support the suit on the theory of plaintiff's brief. If it is rested on the idea that McElvain converted plaintiff's property to his own use it has no basis of fact, for plaintiff had parted with the title to Crawford & Carter as the petition alleges; and, moreover, the legal remedy for a tortious conversion was complete and plaintiff could not resort to an equity suit. If counsel conceive the aforesaid statute vested in plaintiff some lien or interest in the property sold to Crawford & Carter, which entitles plaintiff to pursue McElvain for the value of the property, the notion is erroneous. The cases cited

supra, hold otherwise, and that the purpose and effect of the statute is to except personal property which has not been paid for from the force of the exemption law. This case is not maintainable on any theory except that a positive fraud was perpetrated by defendants; and of this there is no evidence, or not enough to induce us to overrule the findings of the lower court.

The judgment is affirmed. All concur.