STATE ex rel. J. W. SHIPMAN, Respondent, v. L. L. ALLEN et al., Appellants.

Springfield Court of Appeals, May 2, 1910.

1. **PRACTICE: Remarks of Counsel: Harmless Error.** Jurors are apt to take the remarks of counsel with some grains of allowance, and some indulgence must be granted to the indiscretion of counsel growing out of the fervency and zeal that characterize advocacy. Remarks of counsel in this case held harmless.

2. **ATTACHMENT: Action on Bond: Attorney's Fees: Sufficiency of Evidence: Instructions.** In an action on an attachment bond plaintiff is entitled to recover reasonable attorney's fees for services rendered in the attachment suit, and where defendant had appealed from the judgment rendered on the plea in abatement the services of an attorney in looking after the case in an appellate court and getting the appeal dismissed may also be included. Evidence on this question examined and held sufficient to go to the jury, and an instruction covering the proposition is approved.

3. **STATUTE OF LIMITATIONS: Debtor Absenting Himself from Usual Place of Abode: Instructions.** The defense of the Statute of Limitations was set up in an action on a note in defendant's

counterclaim. It was claimed by the creditor that the debtor had, during the period of limitation, absented himself from his usual place of abode so that ordinary process of law could not be served upon him. An instruction declaring the law on this question, and which included an explanation of how process could be served on some member of the debtor's family at his usual place of abode is approved.

4. ———: Residence: Instructions. What is meant by residence within the meaning of the Statute of Limitations is a mixed question of law and fact and should be defined by instructions to the jury.

5. APPELLATE PRACTICE: Reviewing Errors on the Admission and Rejection of Evidence. An appellate court ought not to be compelled to grope blindly through a voluminous abstract without any guide in order to hunt down the specific testimony to which objection is taken and find out whether there was any improper evidence offered in the case.

6. ———: Res Adjudicata: Former Appeal. The doctrine of *res adjudicata* applies as well to judgments of courts of last resort as to those *nisi*; if the same action comes before an appellate court, it is bound by its former decision.

7. ———: ———: ———: Sufficiency of Evidence. Where on a former appeal the appellate court has held that the evidence is sufficient to go to the jury, the question is *res adjudicata* and cannot be reopened on a subsequent appeal where the evidence is substantially the same as in the first case.

8. ———: New Trial: Verdict Against Weight of Evidence. In a law case, it is within the reasonable discretion of the trial court to grant a new trial on the ground that the verdict is not according to the weight of evidence, but the appellate court cannot weigh the evidence in such cases.

Appeal from Stone Circuit Court.—*Hon. John T. Moore*, Judge.

AFFIRMED (*upon condition*).

*W. Cloud* and *R. H. Davis* for appellants.

(1) On the question of the arresting of the running of the Statute of Limitations, the ultimate or constitutive facts are not disputed, and the proper verdict

is merely the conclusion of the law upon the facts, and it was the duty of the court to peremptorily instruct the jury to find for the defendants on their counter-claim. Rhodes v. Farish, 16 Mo. App. 430; Bank v. Hainline, 67 Mo. App. 483; Clemens v. Knox, 31 Mo. App. 185; Brewery v. Schoenlaw, 32 Mo. App. 357; Brewery Co. v. Lindsay, 72 Mo. App. 591; Hoster v. Lange, 80 Mo. App. 234; Alexander v. McNully, 112 Mo. App. 563. (2) The evidence shows conclusively, without contradiction or conflict, that relator and his family, in February or March, 1901, moved to Tulsa, Oklahoma, and lived at that place until July, 1905, and that during that time relator could not have been served with ordinary process of law by leaving a copy of such process with a member of his family over the age of fifteen years at his usual place of abode in this State; and the running of the Statute of Limitations was thereby arrested. State ex rel. v. Shipman, 124 Mo. App. 465, 132 Mo. App. 98; State ex rel. v. Mc-Hale, 16 Mo. App. 478; Johnson v. Smith, 43 Mo. 499; Miller v. Tyler, 61 Mo. 401. (3) When the evidence is of such a character that it is the duty of the trial judge to set aside the verdict as unsupported by the evidence, it is his duty to peremptorily direct a verdict. Jackson v. Hardin, 83 Mo. 186; Hite v. Railroad, 130 Mo. 132; Reichenbach v. Ellerbe, 115 Mo. 595; State ex rel. v. O'Neil, 151 Mo. 89; Furber v. Bolt & Nut Co., 185 Mo. 301; Champagne v. Hamey, 189 Mo. 709; Warner v. Railroad, 178 Mo. 125; Asphalt Co. v. Transit Co., 102 Mo. 476; Warner v. Modern Woodmen, 119 Mo. App. 222.

*R. H. Landrum* and *W. B. Skinner* for respondent.

(1) The measure of damages in an action on an attachment bond where the attachment has been defeated and where the facts are as disclosed by the record in this cause, is money expended by plaintiff in

traveling expenses and hotel bills, laid out in attending and preparing for trial of such attachment, reasonable compensation for plaintiff's time and such reasonable attorney's fees as may appear from the evidence were needful and necessary in defending such attachment. Kelley v. Beauchamp, 59 Mo. 178; State ex rel. v. Allen, 124 Mo. App. 471.   (2)  "It is the fact of absence beyond the reach of process for a substantial period of time and for a purpose not transient in its character  that is important." Miller v. Tyler, 61 Mo. 402; Rhodes v. Farish, 16 Mo. App. 430; Johnson v. Smith, 43 Mo. 501; State ex rel. v. Allen, 132 Mo. App. 98; R. S. 1899, sec. 4282.   (3)  Where a cause has been tried in strict conformity with a former opinion of the appellate court, and the instructions fairly and intelligently present the issues to the jury, the appellate court has no further concern therewith.   When the trial court has pursued strictly the path marked out by the appellate court, it is the duty of the latter to approve it.   Galbreath v. Newton, 45 Mo. App. 312; Galbreath v. Rodgers, 45 Mo. App. 324; Chouteau v. Gibson, 76 Mo. 51.

STATEMENT.—This is the third appeal in the history of the above entitled case, the first being reported in 124 Mo. App. at page 465, 103 S. W. 1090, and the second in 132 Mo. App. at page 98, 111 S. W. 622.

The controversy, in its origin, grew out of a note, dated May 15, 1893, for four hundred and fifty dollars, being the purchase price of an ore crusher sold by Allen, Stark & Company to W. S. White.   The note was made payable to the order of Allen, Stark & Company, and was signed by W. S. White as principal, and J. W.  Shipman and others as securities.  Said note not being paid at maturity, the parties arranged for a new note which was dated November 15, 1893, being for the same amount, payable to the same parties, signed by W. S. White.

J. W. Shipman and others, due three months after date, and was intended to be a renewal note of the first note above described. This second note, as relator J. W. Shipman claims, was invalid and never delivered on account of having been made on certain conditions as to securities besides himself to be procured before the delivery of the note, which conditions, the relator claims, were never complied with.

On August 15, 1901, the notes not having been paid, suit was filed in the circuit court of Lawrence county by Allen, Stark & Company on both of said notes, and a writ of attachment was issued in aid of said suit against J. W. Shipman, the defendant therein and relator herein. The affidavit for the attachment alleged as its ground that the defendant was a non-resident of the State. At the trial, an amended affidavit was filed by said Allen, Stark & Company which included another ground for attachment, to-wit: That the defendant had absented himself from his usual place of abode so that the ordinary process of law could not be served on him. In said suit, Allen, Stark & Company filed their attachment bond as required by law in such cases, executed by L. L. Allen, A. Forsythe and J. F. Stark, appellants in this proceeding. A demurrer for misjoinder of causes of action was sustained, and plaintiffs elected to proceed upon the note of May 15, 1893, being the first note given. The defendant in said attachment suit defended by filing a plea in abatement. Upon trial of such plea, the issues were found by a jury in favor of the defendant J. W. Shipman. A motion for a new trial was filed, which, after being continued from time to time, was overruled. An appeal was thereupon granted plaintiffs to the St. Louis Court of Appeals. Subsequently, a non-suit was taken on the trial on the merits by reason of an adverse ruling of the court. The plaintiffs in said attachment suit took no further steps to perfect their appeal on the plea in abatement, but at the October term, 1906, of the

St. Louis Court of Appeals, the defendant in said suit, J. W. Shipman, presented a certified copy of the record entry of the judgment, etc., on the plea in abatement and filed therewith a motion to affirm the judgment dissolving the attachment because of the failure of the plaintiffs to prosecute their appeal, which motion was sustained.

The present action was filed on February 9, 1906, upon the attachment bond above referred to in which the relator claimed damages by reason of the attachment suit that was abated.

On July 7, 1906, the defendants L. L. Allen and others filed an answer and also a counterclaim in two separate counts based on the two notes, the first count being on the first note dated May 15, 1893, and the second count being on the second note dated November 15, 1893.

As a defense to these notes, relator in his reply set up the Statute of Limitations.

Defendants then replied as a defense to the Statute of Limitations that on the —— day of February or March, 1901, said relator, J. W. Shipman, departed from and resided out of the State of Missouri until the —— day of July, 1905, when he returned to this State; that certain payments had been made upon the said notes, the second note having three payments indorsed on the back as follows: On July 18, 1895, $32.50; on November 7, 1895, $11; on May 4, 1896, $38.

The relator filed a reply to the new matter thus set up, denying that he had departed from and resided out of the State.

Upon the trial, judgment was rendered for the relator for the sum of four hundred and fifty dollars, from which the defendants have perfected their appeal. The facts will appear more fully in the opinion.

NIXON, P. J.—I.   In their motion for new trial, appellants set up sixteen assignments of errors committed.   The first is that the trial court committed error in admitting in evidence the testimony of witnesses Brumback, Gibbs, McPherson and Thornberry. These witnesses were all attorneys whose testimony was introduced for the purpose of showing the value of the professional services of the relator's attorneys in the attachment suit to which the plea in abatement was sustained.   For the purpose of this case it will not be necessary to take up separately the testimony of these expert witnesses in order to decide the question involved in the objection made to their evidence.   They were asked substantially the same questions and gave substantially the same answers.   We take the testimony of Norman Gibbs as representative of all.   The hypothetical case was stated to the witness, reciting the services rendered by the relator's attorneys in the attachment suit, including the filing of the plea in abatement, the management of the trial of the plea in abatement for relator, and the presenting of the motion in the St. Louis Court of Appeals for the affirmance of the judgment because of the default of appellants in perfecting their appeal.   The witness was told that this was a suit by relator upon the attachment bond, and that among other items, relator was seeking to recover his attorneys' fee in said attachment suit; and he was asked, "What would be a reasonable fee for attending to that attachment suit?"   The witness answered: "I would consider two hundred and fifty dollars a moderate fee." Defendants objected to the question for the reason that it called for damages not allowed by law on attachment bonds, and for the reason that relator was not entitled to recover for services rendered on account of the appeal in the St. Louis Court of Appeals, and for the reason that the question was not based upon the evidence in the case.   The objection was overruled.

State ex rel. v. Allen.

It is claimed that the question propounded and the answer given covered services for trying the case on its merits. An examination of the question shows clearly that the attention of the witness was called solely to the services rendered in the attachment suit.

The contention is made that the relator could not recover for his attorneys' services in the St. Louis Court of Appeals. It will be recalled in this connection that upon relator obtaining judgment on the plea in abatement, the appellants (herein) on their application to the court, *nisi*, secured an order granting an appeal to the St. Louis Court of Appeals, but refused or neglected to prosecute such appeal; that the relator presented a copy of the judgment and secured its affirmance in the appellate court. This service was rendered necessary on account of the appellants' own action, and they certainly cannot be heard to say that they are not liable for damages caused by their own act. The trial court committed no error in overruling appellants' objection.

II.   It is assigned as error that the court admitted certain irrelevant and incompetent evidence of witnesses Shipman, Matthews and McCullough; that the court permitted counsel for relator to read in evidence certain testimony of relator given on former trials of this cause; that the court refused to rule on certain objections of defendants to certain questions propounded by relator to certain witnesses; that the court refused to strike out a certain voluntary statement of relator made on the witness stand; that the court improperly made statements of the law of the case in the presence and hearing of the jury.

We think that the appellate court ought not be compelled to grope blindly through a voluminous abstract without any guide in order to hunt down the specific testimony to which objection is taken and to find

out whether there was any improper evidence offered in the case. Such a requirement impedes the business of courts and throws an unnecessary burden upon them. We have performed that duty in this case, however, and find that no material error was committed.

III. Appellants contend that the court committed error in refusing to rebuke relator's counsel in his opening statement to the jury. The same reasoning applies to this assignment as to those just considered in that it is not specific. We have looked into the abstract, however, to ascertain the extent of the misconduct of relator's counsel. The offensive remark seems to have occurred after relator's counsel had given a history of the litigation, when he said: "The evidence will show that they (appellants) tried this suit and the jury brought in a verdict; they took an appeal, and some three or four years afterwards they tried the case on the merits and the suit was in our favor—" (Interrupting) "By Mr. Davis: The defendants object; the records show that they took a nonsuit."

Whatever poison there may have been in the remark of relator's attorney was apparently cured by the form of appellants' objection, and the declaration of Mr. Davis that relator's counsel had made a misstatement and suggesting that a nonsuit had been taken instead was a complete antidote. "The very head and front of their offending hath this extent, no more." Whether the remark of relator's counsel caused an injury to appellants' cause in the minds of the jury we are unable to ascertain. It might be sufficient to say that jurors are apt to take the remarks of counsel with some grains of allowance; and that some indulgence must be granted to such indiscretions growing out of the fervency and zeal that characterizes advocacy. We think the error, if one, was harmless in this case.

IV. Appellants complain of the action of the trial court in giving certain instructions to the jury. The first instruction given by the court for the relator was as follows:

"The court instructs the jury that, in this case, it is admitted that the defendants, Allen, Stark and Forsythe, executed the bond sued on, and read in evidence; that the action in which the attachment was sued out has been fully determined; that the attachment under which the relator Shipman's property was levied upon has been finally determined in Shipman's favor and the attachment dissolved, and the only question for the jury to determine in relator's suit is the amount of damages, if any, which relator has sustained in defending such attachment; and in assessing such damages you will allow him for all money you may find from the evidence he has necessarily expended for traveling expenses and hotel bills in going to employ counsel and consult counsel, in attending the place of trial, and such reasonable compensation for his time, and such reasonable attorneys' fee as you may find from the evidence was reasonably necessary in defending such attachment."

Appellants, in attacking this instruction, urge that there was no proof as to what would be the amount of such reasonable attorneys' fee as was reasonably necessary in defending the attachment suit. As we have already stated, it is a misconception to say that the questions and answers of the attorneys as expert witnesses were as to the value of the services rendered in defending the case down to the taking of the nonsuit, as claimed by appellants. The objection is not well taken.

The objection is made that the expenses and attorneys' fee for defending the attachment suit were not shown to be reasonably necessary. It is recalled that this instruction was drawn and these words inserted under the directions of the St. Louis Court of Appeals (132 Mo. App. loc. cit. 116), and the instruction is according

to the directions therein given under the authority of the case of Kelley v. Beauchamp, 59 Mo. 178. We think there was evidence sufficient to show that the attorneys' fee was reasonable and reasonably necessary in the defense of the attachment suit.

Further objection is made to this instruction for the reason that there was no evidence to show the amount that relator necessarily expended for traveling expenses in preparing for the trial of the attachment suit. Upon the trial of the case, under order of the court, relator filed a bill of particulars submitting a statement of the amount claimed and the items of expenses incurred and expended. Among other items appears the following: "To amount paid for railroad fare, traveling expenses and lodging and boarding expenses in attending trial, visiting and consulting counsel and looking up evidence and preparing for trial, $88.40." The evidence of relator as to the item of railroad fare included in the item of traveling expenses was to the effect that at the time, or during part of the time referred to, he had a railroad pass; that G. W. Thompson was a live stock agent and that through Thompson he secured transportation; that he was then working for Thompson to secure the shipment of cattle from the Territory to St. Louis instead of Kansas City. The amount of the attorneys' fees is shown to have been $250. Relator stated that he was employed in the neighborhood of twenty days in preparing for and attending the trial; that his time was worth five dollars a day during the twenty days, making $100; that he paid out and expended two dollars a day during said time, making $40. This shows a total of $390. The allegation of the petition and the statement in the bill of particulars that he paid out for railroad fare any amount would not be supported by the evidence that he rode on a pass. The amount that he was entitled to recover under the evidence was $390. The judgment was for $450. He therefore received an excess of $60.

This instruction which we are considering is a literal copy of the one given on the two former trials, with the exception that the word "reasonable" is substituted for the words "needful and" in the last line.

It will be seen that this instruction eliminates from the consideration of the jury the first count of the appellants' counterclaim based on the note dated May 15, 1893. In this ruling the court committed no error as under the undisputed evidence in the case, this note was barred by the Statute of Limitations. The invalidity of appellants' counterclaim, based on said note of May 15, 1893, is expressly decided against them in this case as reported in 132 Mo. App. l. c. 112, 113, where the court say: "We rule, therefore, that inasmuch as the entire evidence goes to show the payments were on the second note, the court below was right in refusing to submit to the jury the question of whether they were paid on the first one—was right in refusing the peremptory instruction requested by defendants on the theory that the payment of May 4th took the counterclaim on the first note out of the Statute of Limitations, and in submitting the counterclaim as barred unless the statute was suspended by relator's residence outside the State."

V. The court also gave over appellants' objection the following instruction:

"In determining the fact as to whether J. W. Shipman changed his residence and became a resident of the Indian Territory you are to find these facts from all the facts in the case; if you believe from the evidence that J. W. Shipman changed his residence and absented himself from his usual place of abode so the ordinary process of law could not be served on him, then you should find for the defendants on their counterclaim; but if you believe from the evidence that J. W. Shipman did not change his residence in Missouri so that the ordinary process of law could be served on him by leaving

a copy of the summons with some member of his family over the age of fifteen years at his usual place of abode, then you should find against the defendants on their counterclaim."

This instruction is an exact copy of the one given on the second trial dealing with the Statute of Limitations, with the addition thereto which the appellate court in its opinion required to be added in order to render the instruction free from doubt. The language of the opinion in 132 Mo. App. l. c. 113 is as follows: "It remains to consider the instructions dealing with the departure of relator from the State and his residence in the Indian Territory. The one given for relator is faulty because it omits to advise the jury how ordinary process may be served on a defendant under the statute, to-wit: by leaving a copy of the petition and writ at his usual place of abode with a person of his family over fifteen years of age. R. S. 1899, sec. 570." This addition to the instruction, indicated by the court, is literally copied into the present instruction, and in its present form it is faultless.

VI. It is further objected that the verdict is not supported by the testimony and is against the law as given by the court; that the verdict in favor of relator on defendants' counterclaim is against the testimony and the law as declared by the court; and that the verdict is wholly unsupported by the testimony.

We consider these objections together and in connection with the objections to the above instruction. The appellate court in the discussion of this case has expressly held that the evidence offered in the former trial was sufficient to withstand a demurrer, and the evidence in this case is substantially the same as in that case. 124 Mo. App. l. c. 475. BLAND, P. J., there says: "What is meant by residence, within the meaning of the Statute of Limitations, is a mixed question of law and fact and should be defined by instructions to the jury."

The plain implication of this language is that there was sufficient evidence on the record to support the finding of the jury if the court should properly declare the law. Considering this identical question, and this deliverance of the court, GOODE, J., in 132 Mo. App. l. c. 116, says: "No doubt the evidence tends very cogently, if not conclusively, to prove relator had departed from this State and resided in Tulsa during said period, leaving no family or place of abode here. On the previous appeal the question was treated as one of fact for the jury and so adjudicated; and we will take the ruling then made as the law of the case. Hence we overrule the exception based on the refusal of the trial court to instruct in defendants' favor." This ruling of the appellate court in two cases has placed the question of the demurrer to the evidence absolutely beyond our control. It is *res adjudicata* and we cannot reconsider or reopen the question. The book is closed so far as this appeal is concerned.

But it is assigned for a further reason why we should set aside the verdict and judgment that the weight of the evidence is contrary to the finding of the jury. Section 725, Revised Statutes 1899, provides: "The trial court may award a new trial on any issue, upon good cause shown; but not more than one new trial of the same issue shall be granted to any one party." It was within the reasonable discretion of the court, *nisi,* to grant the appellants a new trial on account of the verdict not being according to the weight of the evidence. We cannot weigh the evidence. The law provides us no balances for that purpose, but prohibits the appellate court from weighing the evidence in cases of this kind. To do so would overthrow the whole jury system and deprive the litigant of his constitutional rights. And the fact that it has already been expressly held in former appeals that the evidence is sufficient to carry the case to the jury requires us to overrule this assignment of error.

VII.   It is further objected that testimony was al-
lowed to be introduced in the trial of relator having
been appointed by the President as a townsite commis-
sioner and which commission was read in evidence and
showed that he was appointed as a resident of Stotts
City, Lawrence county, Missouri.   This evidence was
merely cumulative and its admission constitutes no suffi-
cient ground for a new trial.

This record shows that the trial court has pursued
strictly and faithfully the path marked out by the appel-
late court.   The doctrine of *res adjudicata* applies as
well to judgments of courts of last resort as to those
*nisi.*   If the same action comes before a court of last
resort, it is bound by its former decision.   [Galbreath
v. Newton, 45 Mo. App. 312; Cherry v. K. C., F. S. & M.
Ry. Co., 61 Mo. App. 303.]

We have carefully examined this record to see
whether there was any material error committed to the
prejudice of the rights of the appellants.   There have
been three jury trials extending through a period of sev-
eral years, and three trials have now been had in the ap-
pellate courts, and "found no end in wandering mazes
lost."   The judgments have been uniformly for the re-
lator and for about the same amount as is shown
in this record.   Certainly the appellants cannot say
that they have not had their "day in court."

As we have found, the amount allowed by the jury
for railroad fare and expenses was sixty dollars in ex-
cess of what the evidence showed the relator was enti-
tled to under the bill of particulars rendered in the trial
court.   We find that the case was well tried with this
exception and that no substantial error was committed.
The judgment will therefore be affirmed upon condition
that the relator file with the clerk of this court within
thirty days from the time of the filing of this opinion
a written remittitur of the sum of sixty dollars.   If re-
lator shall not file such remittitur as herein provided,

the judgment will be reversed and the cause remanded for a new trial. All concur.