IN THE

# SUPREME COURT

OF

# OREGON.

Argued March 17; decided September 21, 1896.

## FISHER v. KELLY.

(46 Pac. 146.)

1. ATTACHMENT CREDITOR—PRIVITY OF TITLE—RIGHT TO ATTACK FRAUDULENT CONVEYANCE.—Before an officer who is holding attached property that is claimed by a stranger can justify his possession on the ground that he is the agent of the attaching creditors, he must show not only his writ but also that the plaintiffs in the writ were actual creditors of the defendant; and, having thus brought his principals in privity with the attached property, he may attack the stranger's title.

2. RIGHT OF OFFICER TO QUESTION A STRANGER'S TITLE TO PROPERTY HELD ON EXECUTION.—Where an officer holds under an execution property taken from a stranger, the writ, when supported by the judgment on which it is issued, is a sufficient lien or title to enable him to question the sufficiency of the stranger's title, and he need not show, as in the case of such property held on attachment, the existence of a debt due from the attached debtor to the attaching creditor.

3. PLEADING A JUDGMENT.—Allegations that a certain court was of competent jurisdiction, that a certain person commenced in such court an action against another certain person for the recovery of a certain sum, and recovered judgment for the amount demanded, are sufficient to show the existence of a valid judgment, which is prima facie evidence of the existence of a debt from the defendant to the plaintiff in such action.

4. EFFECT OF AGREEMENT NOT TO RECORD A CHATTEL MORTGAGE—FRAUD AS TO CREDITORS.—A mere agreement between mortgagor

and mortgagee that the mortgage shall not be filed does not render the mortgage fraudulent as to prior creditors of the mortgagor, unless they thereafter deal with the mortgagor as they would not have done had the mortgage been filed.

5. FRAUDULENT CHATTEL MORTGAGE—CODE, § 3053.—The fact that, after the execution and delivery of a secret chattel mortgage, the mortgagor continued to dispose of the goods for his own benefit, does not show that the conveyance was fraudulent, unless it further appears that it was done pursuant to an agreement with the mortgagee. In such case the mortgage would be fraudulent in fact as to all creditors of the mortgagor, both those existing when it was made, and those who became so subsequently, under section 3053 of Hill's Code: *Bremer* v. *Fleckenstein*, 9 Or. 266, and *Aiken* v. *Pascall*, 19 Or. 493, approved.

6. FINDINGS—CONCLUSIONS—FRAUD.—Findings that the parties thereto agreed that a chattel mortgage should be kept secret, that the agreement was carried out, and that the instrument was executed with intent to hinder, delay and deceive creditors, are sufficient to support a conclusion that such mortgage was void as to attaching creditors.

From Multnomah: E. D. SHATTUCK, Judge.

Action of damages against a sheriff for seizing and selling a stock of goods on which plaintiffs claimed to have a chattel mortgage. Another case between the same parties over the same questions was dismissed in this court at a previous term: *Fisher* v. *Kelly*, 26 Or. 249. After the failure of the first case on a technical point, this case was commenced, and came here on appeal by plaintiff from a judgment for defendant.

AFFIRMED.

For appellant there was a brief over the name of *Emmons & Emmons*, with an oral argument by *Messrs. Arthur C. Emmons* and *William A. Williams*

For respondent there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Joseph N. Teal*.

Opinion by MR. JUSTICE MOORE.

This is an action by M. Fisher, Sons & Co. against Penumbra Kelly, sheriff of Multnomah County, to recover the value of and damages for the alleged wrongful conversion of a stock of goods.    The plaintiffs allege that on February 4, 1893, by virtue of a chattel mortgage executed to them by one O. C. McLeod, they had a first lien upon, and were entitled to and in the possession of, a stock of woolen and other cloths, of the value of $5,000.00; that on said day the defendant wrongfully took said goods from their possession, and converted the same to his own use, to their damage in the sum of $5,000.00; and that by reason of such seizure and conversion they were further damaged in the sum of $1,000.00, on account of expenses and attorneys' and counselors' fees in establishing their right thereto, for which sums they demand judgment. The defendant, after denying the material allegations of the complaint, pleaded in justification of the acts complained of, the facts, in substance, as found by the court, and also alleged that plaintiffs' mortgage was fraudulent and void as to McLeod's creditors.    The reply having put in issue some of the material allegations of new matter contained in the answer, a trial was had before the court, which made and filed the following findings:

"I.    That plaintiffs are partners, and were partners at the time of the several transactions herein mentioned, doing business under the firm name and style of M. Fisher, Sons & Co.

"II.    That at the times of the several transactions herein the defendant was then the duly elected, qualified, and acting sheriff of Multnomah County, Oregon.

"III.    That one O. C. McLeod, in January, 1893, and until the levy of the attachment herein mentioned, was engaged in the business of a merchant tailor at Portland, Oregon, and in such business owned a stock of merchant

tailoring goods, and was indebted to the plaintiffs and others.

"IV.   About the 12th day of January, 1893, the plaintiffs sent their claim against McLeod to a firm of attorneys in Portland for collection, or if the same could not be collected, then that payment thereof should be secured. McLeod, being unable to pay the claim, offered to secure the same by his real estate, but plaintiffs, after being consulted, declined to accept this, and, through their attorneys, insisted on a mortgage upon the stock.  This demand McLeod refused to accede to, claiming that a mortgage upon his stock must be made public, and, when made public, would have the effect of destroying his credit, and bringing down upon him all his creditors, and stopping his business, thus placing it beyond his power to pay his creditors.   Thereupon the plaintiffs, through their attorneys, agreed with McLeod that if he would execute the mortgage upon the stock they would not place the same upon record, nor permit the fact that he had executed such a mortgage to become public, but would keep the mortgage in their possession, so that nothing might be known of it. McLeod, accordingly, on January 12, 1893, and pursuant to this agreement, executed the mortgage, and the same was locked up in the safe of the attorneys for the plaintiffs, and meanwhile McLeod continued to do business as before, without any change of possession in the business of any kind whatsoever, and he continued to work up his stock into manufactured goods, and dispose of the same, accepting orders and doing business in all respects after the execution of the mortgage in like manner as before.

"V.   The plaintiffs, through their attorneys, on or about February 1, 1893, made demand upon McLeod that he pay them a certain sum of money on account of his indebtedness to them, but this request Mr. McLeod refused to accede to, unless the plaintiffs would supply him

with goods for his trade of about the same value as the sum of money which he was to pay. A controversy then arose between the plaintiffs' attorneys and McLeod, and thereupon, and on or about February 3, 1893, the plaintiffs' attorneys undertook to place some one in possession of the stock, but McLeod refused to surrender possession of the same, and continued to employ his men and to operate his business in all respects as before the plaintiffs attempted to take possession, except that the plaintiffs maintained in the store some person through whom they claimed to hold possession. Such person, however, had not the keys to the store, nor had he any power or authority over the business, or over the property which he claimed to have in possession, McLeod meanwhile exercising all acts of ownership and possession thereof after such attempted seizure just as prior to the execution of the mortgage.

"VI. On the 4th day of February, 1893, Stein, Simon & Co. (who were creditors of McLeod before the execution of the mortgage above mentioned and on said day) commenced an action in the Circuit Court of the State of Oregon for Multnomah County, against McLeod, to recover the sum of $1,334.00, with interest and costs, and in such action duly sued out a writ of attachment, and caused the same to be placed in the hands of the defendant as sheriff of Multnomah County. Thereupon, pursuant to the command of said writ of attachment, the sheriff of Multnomah County duly seized the stock of goods in controversy, and locked up the store, ejecting all persons therefrom. At the time of this levy McLeod still had the keys of the store, and was doing business in all respects as before any mortgage was executed, and neither the officer who levied the writ nor the plaintiffs in the writ knew anything of this transaction between McLeod and the plaintiffs. Thereafter, and on the same day, one H. E. Fowler, a creditor of McLeod, commenced another action in the

same court to recover the sum of $300.00, with interest and costs, and duly sued out a writ of attachment in said action, and the same was placed in the hands of the defendant, the sheriff of Multnomah County, for execution, and was duly executed by such sheriff by seizing the property in controversy, the same being then in his possession under a prior writ in favor of Stein, Simon & Co., and the sheriff under such writs held the stock of goods until after judgment, and, under such writs and the order of court hereinafter mentioned, held such property until sale was made thereof by him under the executions, as hereinafter alleged.

"VII.   Afterwards the said attaching creditors, Stein, Simon & Co. and H. E. Fowler, each duly recovered judgment for the sums sued for against O. C. McLeod, and as a part of such judgment the court made an order directing that the attached property be sold, and thereupon executions were issued upon such judgments, directed to the sheriff of Multnomah County, Oregon, and commanding him to sell the attached property.   Accordingly the defendant, as sheriff of Multnomah County, did sell the property on the 8th day of March, 1893, for the sum of $1,965.00.   That such sale was regularly and legally made by the defendant as sheriff, and due return of the executions made to the court, and the money realized from such sale applied in satisfaction of said judgments.   And this is the conversion complained of by the plaintiffs.

"VIII.   The mortgage to the plaintiffs was never placed on file, nor was any possession thereunder ever taken.

"IX.   The mortgage to plaintiffs was executed pursuant to an understanding between the plaintiffs and O. C. McLeod that its existence should not be made public, and that no creditors of McLeod, or persons with whom he might desire to deal, might be advised thereof, so that the

attaching creditors did not know, and could not have ascertained, the existence of such mortgage, and such understanding was intended to deceive creditors, and tended to hinder, delay, and defraud them, and the mortgage was, therefore, executed with such intention, and received by plaintiffs, through their attorneys, with the same intention."

And the court finds as conclusions of law:

"I.   That the mortgage of the plaintiffs is fraudulent and void as to the attaching creditors, Stein, Simon & Co. and H. E. Fowler, and is fraudulent and void as to the defendant, Penumbra Kelly, seizing the property under writs of attachment sued out by said creditors.

"II.   That the seizure of the property under the writs of attachment in favor of the creditors, Stein, Simon & Co. and H. E. Fowler, and subsequent sale by the defendant as sheriff of Multnomah County, was regularly and legally done by the defendant as sheriff, and such acts of the defendant do not constitute a conversion of which the plaintiffs can complain.

"III.   That the action should be dismissed and that the defendant should have judgment for his costs and disbursements."

The court having rendered judgment on these findings in favor of the defendant, the plaintiffs appeal.

1.   There are two questions presented by this appeal: (1) Are the conclusions of law deducible from the findings of fact?   And, (2) if so, are they, taken together, sufficient to support the judgment?   The defendant having failed to allege that McLeod was indebted to either Stein, Simon & Co. or Fowler, counsel for plaintiffs contend that, the relation of creditor not being in issue, the defendant could not attack the bona fides of their mortgage, and hence the finding of the court that it was void as to the creditors of McLeod is erroneous.   If the defendant had

relied upon the attachment of the property as the foundation of his right to continue to hold the possession thereof, the objection urged must necessarily prove fatal to the judgment complained of, for in such case the officer, being the agent of the persons who caused the goods to be attached, could attack plaintiffs' mortgage only upon the theory that they were creditors of McLeod, and, having obtained a lien upon the property for the security of their debts, they had been brought into privity with the goods, by which the officer could question the bona fides of plaintiffs' title: Cobbey on Chattel Mortgages, § 749; *People's Savings Bank* v. *Bates,* 120 U. S. 556 (7 Sup. Ct. 679). The general creditor is in no position to raise the question that the mortgage is void as to him until he has seized the property covered by the chattel mortgage, or secured some lien thereon: *Union National Bank* v. *Oium,* 3 N. D. 193 (54 N. W. 1034). And the officer who acts for such creditor, in justifying an attachment of the property and his right to hold the possession thereof, must allege and show a debt due to his principal from the defendant in the writ: *Damon* v. *Bryant,* 2 Pick. 411. The rule is universal that an officer, in justifying his right to hold the possession of attached property claimed by a stranger, must allege and prove all the facts necessary to support the writ, and also that a debt existed in favor of the attaching plaintiff against the defendant therein; and having thus established the fact that the person for whom he acted is a creditor of such defendant, and by his lien upon the property had become privity with it, he may then attack the title of the person claiming the property so attached: *Sanford Mfg. Co.* v. *Wiggin,* 14 N. H. 441 (40 Am. Dec. 198); *Thornburgh* v. *Hand,* 7 Cal. 554; *Noble* v. *Holmes,* 5 Hill, 194; *Newton* v. *Brown,* 2 Utah, 126; *Trowbridge* v. *Bullard,* 81 Mich. 451 (45 N. W. 1013); *Glazer* v. *Clift,* 10 Cal. 303; *Braley* v. *Byrnes,* 20 Minn. 435; *Howard*

v. *Manderfield*, 31 Minn. 337. "When the officer," says Mr. Drake in his work on Attachment (6th Ed., § 185a), "attaches property found in the possession of the defendant, he can always justify the levy by the production of the attachment writ, if the same was issued by a court or officer having lawful authority to issue it, and be in legal form. But when the property is found in the possession of a stranger claiming title, the mere production of the writ will not justify its seizure thereunder; the officer must go further, and prove not only that the attachment defendant was indebted to the attachment plaintiff, but that the attachment was regularly issued. If, in the attachment suit, judgment was rendered for the plaintiff, that will establish the indebtedness; if not, the officer must prove it otherwise, in order to justify his proceeding." The reason for this rule is found in the fact that the person causing the property of another to be attached may have done so to protect the latter's interest, and prevent a bona fide creditor from acquiring a lien thereon; and since the writ of attachment is usually issued by a ministerial officer, upon an ex parte application therefor, it is necessary for the sheriff or other officer, in justifying his proceedings thereunder, to allege and prove that the writ was properly issued, and that a debt existed as the foundation of the right to seize property claimed by a stranger.

2. But when a judgment has been rendered in the action in which property has been attached, the relation of creditor and the recognition of a debt is thereby established: *Rihney* v. *Stryker*, 28 N. Y. 45 (84 Am. Dec. 324), and, this being so, the conclusion of the court upon the question must, upon principle, relate back to and render unnecessary the allegation and proof of the existence of a debt as a justification for the attachment, for the office of a writ of attachment is to hold the property of the debtor until an execution can be issued upon a judgment ren-

dered in the action: *Trowbridge* v. *Bullard,* 81 Mich. 451 (45 N. W. 1013). And, upon the levy of the latter writ upon the property under attachment, the object of the former has been duly accomplished. Judgment having been rendered in the actions of Stein, Simon & Co. and Fowler against McLeod, and the property so attached ordered to be sold, in pursuance of which executions were issued and levied thereon, the officer no longer held the goods under the writs of attachments, and hence it was unnecessary to allege or prove the existence of a debt as the foundation of his right to maintain possession thereof, or to enable him to question the sufficiency of plaintiffs' title thereto, since he was in a position to do this by alleging and proving the judgments that had been given. It must be admitted that before a person can attack a transfer of personal property, either actual or constructive, he must show himself to be a creditor, or representing one, and this he cannot do merely by a production of the execution, which, taken by itself, is not evidence of an indebtedness; and an officer justifying the seizure of such property, and attacking a sale or mortgage thereof as fraudulent, must produce the execution in pursuance of which he acted, together with the judgment under which the same was issued: *Ford* v. *McMaster,* 6 Mont. 240 (11 Pac. 669); *Paige* v. *O'Neal,* 12 Cal. 483; *Bickerstaff* v. *Doub,* 19 Cal. 109 (79 Am. Dec. 204); *Goodnow* v. *Smith,* 97 Mass. 69.

3. It is also contended that the allegations of the answer are·not sufficient to show the rendition of a valid judgment, and that the judgments pleaded therein are not evidence against the plaintiffs, who were strangers to the record, that either Stein, Simon & Co. or Fowler was a creditor of McLeod. In pleading a judgment of a court of special jurisdiction it is not necessary to state the facts conferring jurisdiction, but such judgment may be stated to have been duly given or made: Section 86, Hill's Code.

In *Page* v. *Smith,* 13 Or. 410 (10 Pac. 833), which was an
action to recover the possession of a certain safe, it was
alleged in the answer "that said safe was seized on attach-
ment as the property of the said Linder in an action in
justice's court, in which one August Buckler was plaintiff,
and said Linder was defendant; that judgment was duly
rendered against Linder, and execution issued thereon,
and that by virtue of said execution the safe was duly
advertised for sale and sold to the defendant."   THAYER,
J., in reviewing the pleading, says: ' "The subsequent alle-
gations in the answer, that judgment was duly rendered
against Linder, and execution issued thereon, and that by
virtue of said execution the safe was sold, were not a suffi-
cient statement of the facts of the recovery of a 'valid
judgment.   They do not show that any action was com-
menced in any court.   The statute has very much simpli-
fied the pleading of judgments of justices' courts, but I
think it still necessary to allege the commencement of the
action in the particular court, and to specify the claim
upon which it is brought, so as to show that the court had
jurisdiction of the subject-matter."   In the case at bar the
defendant alleges that Stein, Simon & Co. duly com-
menced an action in the Circuit Court of said county and
State against one O. C. McLeod for the recovery of
$1,334.00, and recovered judgment for the amount de-
manded; and that Fowler commenced an action in said
court against the same party for the recovery of $300.00,
and obtained a like judgment.   An action shall be deemed
commenced as to the defendant when the complaint is
filed and the summons served on him (section 14, Hill's
Code), and hence the allegation in each case that the action
was commenced against McLeod in said court was equiva-
lent to an averment that the complaint had been filed, and
the summons served on him, thus giving to the court juris-
diction to render the said judgments, and the answer, hav-

ing alleged that the actions were commenced and the judgments given by a court of competent jurisdiction, stated the existence of an indebtedness due from McLeod to the respective plaintiffs in said actions. The reply did not deny the rendition of the judgments in favor of the attaching creditors, the issue of the executions thereon, the sale of the stock of goods thereunder, the return of said writs, the satisfaction of the judgment in favor of Stein, Simon & Co., or the application of the remainder of the proceeds of such sale upon the execution issued upon the Fowler judgment, and these facts having been alleged in the answer were thereby admitted, rendering evidence thereof and findings by the court thereon unnecessary. It is true the judgments may have been collusively obtained, and that no debt was due from McLeod to either Stein, Simon & Co. or Fowler; but the plaintiffs, having neglected to put these facts in issue, are bound thereby, and it must be presumed that an indebtedness existed, and that the judgments were properly rendered.

4. The remaining and most important inquiry is whether the chattel mortgage is void as to McLeod's creditors. The court found, in effect, that the mortgage was executed in accordance with the terms of an agreement entered into between plaintiffs and McLeod, in pursuance of which the instrument was not filed; that the plaintiff never obtained possession of the property covered thereby; and that the defendant and those for whom he acted had no knowledge of the transaction between McLeod and the plaintiffs until after the property was attached. These findings, being supported by evidence and predicated upon issues made by the pleadings, are binding on this court, and, considering them alone, can it be said, as a matter of law, that the mortgage is void as to Stein, Simon & Co., whom the court finds were creditors of McLeod before its execution? In *Barton* v. *Sit-*

*lington,* 128 Mo. 164 (30 S. W. 514), an agreement was entered into between the mortgagor and mortgagee to the effect that a certain chattel mortgage should not be placed upon record unless the creditors of the mortgagor proceeded to collect their debts, or took some steps that would be likely to jeopardize the interests of the mortgagee. The sheriff, in pursuance of an execution issued upon a judgment rendered against the mortgagor, levied upon the property covered by the mortgage, and in an action brought by the mortgagee against the officer to recover the property in his possession it was contended that such agreement, as a matter of law, rendered the mortgage fraudulent and void as to the prior creditors of the mortgagors, but it was held that such creditors could not complain of a failure to place the mortgage on record, unless they dealt with the mortgagor after its execution as they would not have dealt had it been recorded, and that, the debt upon which judgment was rendered having been incurred prior to the execution of the mortgage, the creditor was not defrauded by such agreement or the failure to record the mortgage. See also Jones on Chattel Mortgages, § 337*a*; *Johnson* v. *Stellwagen,* 67 Mich. 10 (34 N. W. 252).

5. It is alleged in the answer that it was understood and agreed by and between the mortgagor and mortgagee that the mortgagor should continue to run his business as he had theretofore done, buying or selling for cash or credit for his own benefit, paying bills for current expenses, and conducting said store, and taking orders for suits of clothes, and cutting the patterns up into said suits, disposing of the same, and holding the proceeds to his own use, and these allegations are put in issue by the reply. If the court had made a finding upon this issue adverse to the plaintiffs, it must be conceded that the mortgage is void as to the creditors of McLeod. There is nothing on the

face of the instrument, however, which would indicate that it was executed for the use or benefit of the mortgagor, and in such case it cannot be said to be void in law.    But when it appears from extrinsic evidence that the mortgagor is to retain possession of the goods mortgaged, and sell the same in the usual course of business, the mortgage is fraudulent in fact, for the reason that it is for the mortgagor's own use and benefit, and comes within the inhibition of section 3053, Hill's Code, which declares all transfers of goods and chattels made in trust for the person making the same shall be void as against the creditors, existing or subsequent, of such person:    *Orton* v. *Orton, 7* Or. 478 (33 Am. Rep. 717); *Jacobs* v. *Ervin,* 9 Or. 52; *Bremer* v. *Fleckenstein,* 9 Or. 266; *Aiken* v. *Pascall,* 19 Or. 493 (24 Pac. 1039).    The fourth finding of fact, after stating the agreement entered into between the mortgagor and mortgagees, is as follows:    "McLeod accordingly, on January 12, 1893, and pursuant to this agreement, executed the mortgage, and the same was locked up in the safe of the attorneys for plaintiffs, and meanwhile McLeod continued to do business as before without any change of possession in the business of any kind whatsoever, and he continued to work up his stock into manufactured goods and dispose of the same, accepting orders and doing business in all respects after the execution of the mortgage in like manner as before."    This finding is probably equivalent to a statement that McLeod disposed of the stock of goods for his own use and benefit, but it does not appear therefrom that such disposal was in pursuance of any agreement entered into between the mortgagor and mortgagees, or that the latter had knowledge of, consented to, or ratified, such disposal, in the absence of which it does not show that the plaintiffs had given McLeod power to dispose of the property covered by the mortgage.

6.    Here was a failure of the court to find upon an

issue made by the pleadings, the materiality of which must be determined by a consideration of the question whether it could be stricken from the answer without leaving it insufficient as a defense: Section 95, Hill's Code. The ninth finding of fact is to the effect that the mortgage was given and received pursuant to an agreement which was intended to deceive creditors. The instrument not having been filed, created a presumption of fraud against the creditors of McLeod, during his possession of the property, disputable only by making it to appear on the part of the plaintiffs that it was made in good faith, for a sufficient consideration, and without intent to defraud the creditors of the mortgagor: Subd. 40, § 776, Hill's Code.* It has been held by this court that a showing of these facts overcomes such presumption, establishes the validity of the mortgage, and renders the security superior to a subsequent attachment or mortgage of the same property, even in the absence of notice of the unfiled mortgage: *Marks* v. *Miller,* 21 Or. 317 (14 L. R. A. 190, 28 Pac. 14); *Davis* v. *Bowman,* 25 Or. 189 (35 Pac. 264). The defendant having alleged that the chattel mortgage had not been filed, and that he and those for whom he acted had no notice or knowledge thereof, the burden was thereby cast upon the plaintiffs to allege in the reply and prove at the trial that the mortgage was executed in good faith, for a sufficient consideration, and without intent to defraud McLeod's creditors. Examining the reply, we find that it fails to allege either of these facts, and the effect of the court's findings thereon is that McLeod was indebted to the plaintiffs, and gave a mortgage on his stock of goods as security therefor. The finding that the mortgage was executed with the intent to deceive creditors, and tended

---

* The occurrences on which this case is based took place a few days before the legislature passed the act relating to the filing of chattel mortgages found in Laws 1893, p. 30.—REPORTER.

to hinder, delay, and defraud them, strengthens the presumption of fraud arising from the failure to file the instrument. This finding is predicated upon an issue tendered by the defendant, and from it the conclusion of law is deducible that the mortgage was void as to the attaching creditors, without reference to the issue that the mortgagees gave the mortgagor power to dispose of the goods for his own use and benefit, which might have been stricken from the pleading without leaving it insufficient as a defense. The conclusions of law are, therefore, deducible from the findings of fact, and together are sufficient to support the judgment, which is affirmed.

AFFIRMED.