Submitted on briefs July 6, affirmed July 28, 1914.

# STANLEY v. TOPPING.

(143 Pac. 632.)

**Equity—Answer—Administrator's Failure to Deny.**

1. Under Section 95, L. O. L., providing that every material allegation of the complaint not specifically denied by the answer must for the purpose of the action be taken as true, an allegation in a complaint to determine adverse claims that the plaintiff is the owner in fee simple, not denied by the answer, is admitted.

**Quieting Title—Right to Relief—Possession of Plaintiff.**

2. In a suit to determine adverse claims, where the plaintiff's allegation of ownership in fee simple is not denied, but defendant denies plaintiff's possession and asserts his own possession, if plaintiff was in possession at the commencement of the suit, she is entitled to a decree, but not otherwise.

**Quieting Title—Evidence—Weight and Sufficiency.**

3. In a suit to determine adverse claims, evidence held to show that the tenant of defendant had yielded possession to the guardian of plaintiff, who took possession thereof for his ward, and then put the tenant in possession as keeper of the property for plaintiff.

**Quieting Title—Right to Relief—Possession of Plaintiff.**

4. Acts of the defendant in a suit to determine adverse claims, several months after commencement of the suit, as to the possesssion of the property, are immaterial.

**Quieting Title—Pleading—Right to Possession.**

5. Under Section 725, L. O. L., providing that evidence must correspond with the material allegations of the pleadings and be relevant to the questions in dispute, where defendant in a suit to determine adverse claims does not deny plaintiff's allegation of ownership in fee simple, nor make any showing as to the right to possession, such right is in the plaintiff.

**Quieting Title—Pleading—Equitable Estoppel.**

6. In a suit to determine adverse claims, where defendant does not deny plaintiff's allegation of ownership in fee simple, he cannot claim that plaintiff, in procuring possession from defendant's tenant by threat of suit before commencement of the suit at bar, comes into court with unclean hands.

**Landlord and Tenant—Title of Landlord—Estoppel of Tenant.**

7. When the owner of the paramount title, having a present right of possession of demised premises, demands possession, the tenant may yield possession to such owner, and is not then estopped to deny the title of the landlord.

> [As to estoppel of tenant to deny landlord's title,. see note in 89 Am. St. Rep. ·62.]

From Coos: JOHN S. COKE, Judge.

This is a suit by Ruth A. Stanley against Geo. P. Topping, administrator, and Frank Whitney and Coos County, Oregon, and the unknown heirs of Harry Wilson, deceased. From a decree in favor of plaintiff, defendants Topping and Whitney appeal. Submitted on briefs without arguments under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi). The facts appear in the opinion of the court.

AFFIRMED.

For appellants there was a brief over the name of *Mr. G. T. Treadgold.*

For respondent there was a brief over the names of *Mr. J. J. Stanley, Mr. E. D. Sperry* and *Mr. Lawrence A. Liljeqvist.*

In Banc. MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to determine an adverse claim to real property. The plaintiff is a minor, of the age of about 13 years, and she appears in this suit by her father, J. J. Stanley, who is her guardian. The defendant George P. Topping is the administrator of the estate of Harry Wilson, deceased. The complaint alleges, *inter alia,* the following facts:

"That the plaintiff is the owner in fee simple and in possession of the following described real property, situate in the county of Coos and State of Oregon, to wit: Lots five, six, seven and eight, in block five, of the Portland Addition to the town of Bandon, according to the plat thereof on file and of record in the office of the county clerk of said Coos County. That the said real property is not in the actual possession of any other person. That the defendants above named

claim an interest or estate in and to the above-described real property adverse to this plaintiff. That the plaintiff requires and demands that the said defendants and each and all of them set up and allege whatever right, title, or interest is claimed by them or either or any of them in and to the above-described real estate or any part thereof, and to submit the same to the judicial investigation and determination of this court.''

The defendant George P. Topping answered as follows:

''Comes now the defendants, Topping, administrator and Whitney, and for answer to the complaint of plaintiff filed herein plead as follows, to wit: Deny that at the time of the commencement of this suit the plaintiff was in possession of the property described in said complaint. Deny that at the commencement of this suit the property described in plaintiff's complaint was in the possession of no person, but, on the contrary, allege that at the time of the commencement of this suit said property was, and still is, in the actual possession of the tenants of the defendant administrator of the estate of Harry Wilson, deceased, through and by virtue of a contract entered into by and between said administrator and said tenants; that therefore the court has no jurisdiction over this suit. Wherefore the defendants here answering pray for an order dismissing this case for want of jurisdiction, and for such other relief as to the court may seem just.''

The plaintiff filed a reply, denying each of the allegations of the answer. The trial court made findings and entered a decree in favor of the plaintiff. The defendants appeal, and contend that the trial court erred in not dismissing the plaintiff's complaint for want of equitable jurisdiction.

The complaint alleges that the plaintiff is the owner in fee simple, and in the possession of lots 5, 6, 7 and 8, in block 5, of the Portland Addition to the town of Bandon, in Coos County, State of Oregon.

The answer denies that at the date of the commencement of this suit the plaintiff was in the possession of the property described in the complaint. The answer denies, also, that at the commencement of this suit the property described in the complaint was in the actual possession of no person, other than the plaintiff, and alleges that said property was at the commencement of this suit and still is in the actual possession of the tenants of the defendant administrator of the estate of Harry Wilson, deceased, and the defendants contend that by reason of said supposed possession by the tenants of said defendant the court had no jurisdiction of this suit.

1. As the answer does not deny that the plaintiff is the owner in fee simple of said real property, that fact is admitted to be true for the purpose of this suit: Section 95, L. O. L. The allegation of the complaint, that the defendants claim an interest or estate in and to said real property, also, is not denied by the answer, and hence it is admitted to be true.

2. The only allegations of the complaint that are denied are those relating to the possession of the property in dispute. The plaintiff asserts that at the commencement of the suit she was in the possession of the property described in the complaint, and that said property was not in the actual possession of any person other than herself. The defendant Topping denies this, and asserts that he was in the possession of said property by his tenants at that date. If the plaintiff was in the possession of said property at the date of the commencement of this suit, she is entitled to a decree as prayed for in the complaint; but if she was not in possession of said property at that date, she is not entitled to a decree. The question for determination is, therefore: Was the plaintiff in the possession

71 Or.—38

of the premises in dispute, or was some other person in the actual possession thereof, at that date?

3. As the title of the plaintiff to the premises in dispute is admitted by the pleadings, it necessarily follows that she was, at the time of the commencement of this suit, entitled to the possession of said premises, unless it is shown that she was not entitled thereto at that time, for ownership of real property in fee simple entitles the owner *prima facie* to the possession thereof. There is nothing in the pleadings or in the proof to show that the plaintiff was not entitled to the possession of said property at the commencement of this suit, and hence she was entitled thereto at that time. The evidence shows that for some time prior to the commencement of this suit the defendant administrator was in possession of said premises, and that Sarah Haines, as his tenant, occupied the house thereon.

This suit was commenced on August 28, 1912, and until a short time before the filing of the complaint on said day the administrator defendant was, by his said tenant, in possession of said premises. The guardian of the plaintiff had, some time prior to the commencement of this suit, informed the administrator defendant that his daughter, the plaintiff, owned said premises. J. J. Stanley, the guardian of the plaintiff, testified that at the date of the commencement of this suit he was in possession of said premises; that he learned that a woman named Sarah Haines was living in the house on the premises; that he prepared a complaint for an action of ejectment, and was intending to bring said action against her to recover possession of said premises, but, learning that she was an elderly lady, with no one living with her capable of looking after her interests, it occurred to him that she might possibly rather deliver possession of the

premises to him than have said action brought against her. The witness prepared, also, the complaint in this suit, with summons and copy of the complaint, and delivered them and the complaint and copy thereof and summons in the ejectment action, to the deputy county clerk, to be retained by him without filing, until the witness should notify him which complaint to file. The witness left with said deputy the fee for filing one of the complaints. The witness was desirous to begin either the ejectment action or this suit at once, in the hope of getting the matter tried at the then approaching September term of Circuit Court. The witness went to Bandon, on August 28th, to see Mrs. Sarah Haines concerning getting possession of the premises. He met Mr. E. M. Blackerby at Bandon, the latter person being acquainted with Mrs. Haines, and the witness and Blackerby went to see Mrs. Haines. She was not at the house on the premises, but they found her at the residence of a neighbor, and they and she went to the house on the premises together. The witness talked with Mrs. Haines, and told her that he intended to institute some kind of legal proceedings that day to recover the premises in dispute, and that the proceeding would be either an action of ejectment or a suit in equity to quiet title; that the kind of action or suit that he would bring depended on whether or not he should get possession of the property. He told her that, if she would move out and give him possession, it would not be necessary for him to make her a party to the proceedings. She told the witness that she did not want to be mixed up in it in any way, and that she would move her goods out in the street rather than be tangled up in a lawsuit. Mr. Blackerby suggested to her that she might turn the possession of the premises over to the witness, and leave her goods

there until she should have time to find another place
to move into.  Witness told her that he thought what
Blackerby had suggested would be sufficient, and asked
her if she would go with him and Blackerby over to
the house on the premises, and deliver the possession
thereof right then, and she said that she would go.
They then went to the house on the premises.  Mrs.
Haines unlocked the front door of the house, and they
went into the house.  Mrs. Haines showed the witness
through the house.  Witness then told her that he
wanted to nail up trespass notices on the premises, and
asked her if she had a hammer, and she got a hammer
for him, and he nailed up one on the front of the shed
or stoop from the front door, and another on the front
gate.  Witness then asked Mrs. Haines where the key
was.  She was then standing on the outside of the
house on the sidewalk, talking with Mr. Blackerby,
and she told him that the key was in the house on the
table where he had been writing.  She had unlocked
the house and laid the key on the table.  The witness
got the key and saw that the back doors were properly
locked, and then went out of the front door and locked
it, and stepped out on the sidewalk where Mrs. Haines
and Mr. Blackerby were, and the witness said to Mrs.
Haines, "Now, you deliver this property to me, do you,
for my daughter, as her guardian?" and she said,
"Yes, sir; I do."  The witness then said to her, "I
want someone to look after the property and take care
of it, and see that nobody else comes in or destroys it,
or anything; and if you will do this, I am willing to
pay you for your trouble," and he said, "Here is the
key, and I want you to look after it, and take charge
of it," and she said, "All right," that she would, and
the witness handed her 50 cents, which she accepted.
She told witness that she would take care of the prop-

ert and look after it for him. The witness then went
to the telephone and directed the clerk to file the
complaint in this case. The action of ejectment was
not commenced.

The evidence of Mr. Blackerby corroborates that of
Whitney. The latter testified very fully, and his evi-
dence and that of Mr. Blackerby show that Mrs.
Haines said that she did not want to be made a party
to any suit or action, and that she did not want to be
mixed up in the matter at all, and that she was willing
to move out of the property, or turn it over to Mr.
Whitney, as guardian for his daughter, to avoid being
made a party to an action; that she did, in fact, turn
it over to him, and that he took possession of it, and
had the key to the house and locked the doors and
posted trespass notices on the property; after doing
this, he arranged with Mrs. Haines that she should
take charge of the property and take care of it for him,
and that he agreed to pay her for doing so, and handed
her 50 cents, and that she agreed that she would take
care of said property for him. She remained in the
house as a keeper of the property for the plaintiff,
under an agreement that she was to be paid therefor
by the guardian of the plaintiff.

Mrs. Sarah Haines was called as a witness for the
defendants, but as to the substance of what was said
and done when she gave the possession of the prem-
ises in dispute to the plaintiff she does not differ mate-
rially from the evidence of Stanley and Blackerby.
She admits giving possession of the property to Mr.
Stanley, but claims that she did it to avoid being
thrown out. She says that, after Mr. Stanley obtained
the key and locked the house, he said to her:

" 'I will turn this key over to you, and give you 50
cents, and pay you to take care of it.' I don't remem-

ber; I might have said 'All right,' or something to that effect.''

As a witness, she claimed that she did wrong in turning the property over to Mr. Stanley, without notifying Mr. Topping. She says (Ev., p. 33) that she thinks that Stanley treated her kindly. She says that Stanley told her that, if she did not give him possession, he would commence a suit against her immediately, and that she told him that she did not want to be made a party to the suit, or mixed up with it in any way. She says (Ev., p. 35) that Stanley told her that he had to have possession that day, and if she would not give it peaceably he would take it by law. According to the evidence of Stanley and Blackerby, Stanley told her that, if she would not give him possession that day, he would bring an action against her, and this is evidently what he told her. He told her that he would bring a suit against her that day unless she would give him possession, and she seems to have thought that she could have been ejected on the day that the action was brought; but what he said to her did not mean that.

4. The evidence as a whole shows that Mrs. Haines yielded the possession of the premises to the plaintiff's guardian, and that he took possession thereof for his ward, and then put Mrs. Haines in possession as keeper of the property for the plaintiff. The facts are clear. What the defendant Topping did in January, after the suit was begun, as to the possession of the property, is irrelevant, as the issue is as to the possession of the property on August 28, 1912. The pleadings allege nothing as to possession several months thereafter.

5. Evidence must correspond with the material allegations of the pleadings, and be relevant to the questions in dispute, and collateral questions must be

avoided: Section 725, L. O. L.   The plaintiff had a right to the possession of the property in dispute on August 28, 1912, and neither the defendant Topping nor his tenant, Mrs. Haines, had any right to the possession thereof.   This necessarily follows from the defendants' admission that the plaintiff was the owner in fee simple of the premises at the date of the commencement of this suit.   Being such owner, she was entitled to the possession of the premises—there being no fact alleged or proved tending to show that she was not so entitled.   The right to possession is in the owner in fee simple, in the absence of a showing to the contrary.   The evidence shows that the plaintiff had the possession of the premises at the date of the commencement of the suit, unless her possession at that time was in some manner rendered invalid.

6. The counsel for the defendants contends that Topping, the administrator, by his tenant, Mrs. Haines, had possession of the premises in dispute before she yielded the possession to the plaintiff, as stated *supra,* and in relation to such yielding of the possession to the plaintiff he says in his brief:

"Can a landlord, as in this case, administrator of an estate, representing the estate and the heirs as far as possession is concerned, be divested of the possession of the property of deceased, which he had for years, by the act of the plaintiff's attorney, seeking to gain possession for the purpose of instituting a suit in equity to avoid commencing an action at law, by collusion with or coercion of the tenant?   Can a plaintiff make jurisdictional facts by collusion or coercion, for the purpose of maintaining a suit in equity?   If these questions can be answered in the affirmative, then it will be only a step to revising the maxims of equity, so that a man may come into equity, not with clean hands, but in any condition he may desire, so that equity, instead of being an instrument for the dispens-

ing of whole-hearted, substantial justice, will become a weapon in the hands of intriguers, schemers and charlatans.''

The defendant Topping is not in a proper position to make such an appeal as that. As shown *supra,* he admits, for the purposes of this suit, that the plaintiff is the owner in fee simple of said premises, and there is no evidence tending to show that the estate of Harry Wilson has any interest whatever in said property. The defendant is bound by his pleading. Hence we begin the consideration of this case with the admission by the defendants that the plaintiff is the owner in fee simple of said premises. There is no evidence of fraud, collusion or coercion.

The evidence shows that Mrs. Haines, for the purpose of avoiding the trouble of a lawsuit, yielded the possession of the premises to the plaintiff, who was the owner thereof, and entitled to the possession thereof, according to the admissions of the pleadings. The plaintiff accepted the possession of the premises, and then put Mrs. Haines in possession thereof, as keeper for the plaintiff, and agreed to pay her for her services as keeper, and she accepted said position. As the pleadings admit that the title to the premises is in the plaintiff, we must hold in accordance with that admission. There is no evidence tending to prove that the estate of Harry Wilson has any interest in the premises in dispute. Under the pleadings, evidence to show title in said estate, or in the Wilson heirs, would have been irrelevant.

7. Mrs. Haines had a right to yield the possession of the premises in dispute to the paramount owner, who had the right to the possession thereof, and she was not obliged to wait until she should be ejected by legal process. In *Messinger* v. *Warehouse Co.,* 39 Or. 548

(65 Pac. 808), involving the right of a tenant to attorn to the owner of the paramount title without an actual ouster, the court says:

"We do not wish to be understood as intimating that a valid attornment [by a tenant] cannot be made to one having a title paramount to that of the landlord, without such ouster, *for the weight of authority is the other way.*"

In *Merryman* v. *Bourne,* 76 U. S. (9 Wall.) 593 (19 L. Ed. 683), a part of the syllabus is:

"If a party who has entered into possession of land as a tenant under another is threatened with suit upon a paramount title, the threat, under such circumstances, *is equivalent to eviction.* He [the tenant] may thereupon submit in good faith, and attorn to the party holding a valid title, *to avoid litigation.* In such case it is incumbent upon him, and those who have profited by his submission, to show the existence and superiority of the title in question."

In *Hyman* v. *Boston C. M. Co.* (Super. N. Y.), 11 N. Y. Supp. 52, the court says:

"It is not necessary, in order to constitute *an eviction,* that the tenant be dispossessed or deprived of the demised premises *by process of law.* It is enough if the tenant yield the possession of the premises to the person having the legal title thereto, or to the person who has been adjudged to be entitled to the possession of the premises."

In *Morse* v. *Goddard,* 54 Mass. (13 Met.) 177 (46 Am. Dec. 728), the syllabus is:

"If a lessee, to prevent being actually expelled from the demised premises, yields the possession thereof, and attorns, in good faith to one who has a title paramount to that of the lessee and his lessor, and also a right to immediate possession, this is equivalent to an actual ouster, and is a good defense to an action, brought by the lessor against the lessee, for rent."

In *Tyson* v. *Chestnut*, 118 Ala. 405 (24 South. 79), the court says:

"To support the first assignment it was not at all necessary for the plaintiff [the tenant] to prove an actual forcible eviction. Showing a demand for possession by the Chestnuts, claiming under a title which, as we have seen, was paramount, it was only necessary for him to show, further, that he yielded and surrendered possession in obedience to such demand and in recognition of the dominant character of the title under which the demand was made."

11 Am. & Eng. Ency. Law (2 ed.), page 480, says:

"As has been seen, an eviction by title paramount arises where a third person established a title to the demised premises, superior to that of the landlord, and gains possession by virtue of that title. It is not necessary that the tenant should be forcibly ejected or dispossessed of the demised premises by process of law, *but he may peaceably yield possession to the person who has the superior title,* or who has been adjudged to be entitled to the possession, *and to treat himself as having been evicted.* The person to whom he yields possession must, however, have a present right of entry, and the tenant must act in good faith and without fraud or collusion. It has been said that by so yielding possession, or by making no resistance to the entry, the tenant takes upon himself the burden of proving that such entry was under and by virtue of a paramount title."

24 Cyc., page 1133, says:

"However, since actual ouster is not necessary in order to constitute an eviction, if a lessee, to prevent being actually expelled from the demised premises, yields possession thereof, and attorns in good faith to one who has a title paramount to that of the lessee and his lessor, and also a right to immediate possession, *this is equivalent to any actual ouster.*"

Where a tenant yields the possession of the demised premises to the owner of a paramount title, with a present right of possession, the rule that a tenant is estopped to deny the landlord's title ceases to obtain: 24 Cyc., pages 948, 949, says:

"The estoppel is terminated by the eviction of the tenant by title paramount, or by acts amounting to an ouster which authorize the tenant to attorn to the holder of the paramount title as if actually evicted."

According to the weight of authority, a tenant is not obliged to wait until he was forcibly ejected by legal process. When the owner of the paramount title, having a present right of possession of the demised premises, demands the possession thereof, the tenant has a right to recognize such superior title and right of possession, and to yield the possession of the premises to such owner, and, when he does this, he is not estopped to deny the title of the landlord. When a tenant thus yields the possession of the demised premises to the rightful owner, the possession of the landlord by his tenant ceases, and the possession of the rightful owner begins. The moment that Mrs. Haines yielded the possession of the premises in dispute to the plaintiff, as stated *supra,* the possession of the defendant Topping ceased, and that of the plaintiff commenced. We find, from the evidence, that the possession of the property in dispute was at the date of the commencement of this suit in the plaintiff, and that no other person had the actual or the constructive possession thereof.

It may be that the defendants erred in not denying the plaintiff's title to said property, and in not setting up title thereto in the estate of Harry Wilson, or in his heirs. However, that was a matter for their consideration when they were preparing their answer.

The defendants had a right to set up by their answer all the defenses that they had: Laws 1911, pp. 144, 145. They could have properly denied the plaintiff's title and possession, and that no person, other than the plaintiff, was in the actual possession of the premises, and have set up ownership in the Wilson estate, or in the Wilson heirs, and actual possession in the defendant Topping. All these matters could have been properly pleaded and determined in this suit.

This suit is based upon Section 516, L. O. L., and it is necessary that the plaintiff, in a suit based on said section, allege in the complaint that the property in question is not in the actual possession of a person other than the plaintiff, and, if this is not alleged in some form, the complaint does not state facts sufficient to constitute a cause of suit. We approve the findings and the decree of the court below.

The decree of the court below is affirmed.

AFFIRMED.