Argued September 11, affirmed November 12, petition for
rehearing denied December 15, 1964

# EDGREN *v.* REISSNER
396 P. 2d 564

*William B. Murray,* Portland, argued the cause and submitted the brief for appellant.

*Thomas D. Kerrigan,* Portland, argued the cause and submitted the brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Evelyn Reissner, from a judgment of the circuit court for $12,000 in favor of the plaintiff, Bessie Edgren. The challenged judgment terminated an action instituted by the plaintiff which averred that the defendant wrongfully alienated the affection of plaintiff's husband. Defendant's motion for judgment notwithstanding the verdict and in the alternative for a new trial was denied. The defendant-appellant presents nine assignments of error.

The complaint alleges (1) the marriage of the plaintiff to Oscar J. Edgren December 1, 1933, (2) the continuance of that status until the filing of this action, (3) acts of misconduct with malicious intent on the part of the defendant, (4) that the acts occurred in the four months prior to Oscar's divorce from the plaintiff and his marriage to the defendant, (5) that plaintiff's husband's affection was alienated, and (6) that the acts of the defendant caused the alienation of Oscar's affection. Defendant's supplemental answer (a) denies all of the allegations of the complaint, (b) avers that the claimed marriage of the plaintiff to Oscar had terminated prior to the alleged cause of action, and (c) sets forth two affirmative defenses. The first of the affirmative defenses alleges that any

loss of affection that the plaintiff suffered was caused by her own misconduct and that she connived at and condoned Oscar's withdrawal of affections from her. As a second affirmative defense the defendant alleges that she was deceived by Oscar into marrying him and that she acted in reliance and good faith on his false representations.

Plaintiff's motions to strike from the answer the averment just summarized were denied. Plaintiff thereupon filed a reply in which she denied all the allegations of the first and second affirmative defenses.

We shall now consider the first four assignments of error and will consider them conjunctively; they are so presented in appellant's brief. They relate to an alleged fatal defect and insufficiency in the plaintiff's pleadings.[1]

Paragraph I of the complaint reads:

"On December 1, 1933, plaintiff and Oscar J. Edgren were married and ever since said date plaintiff has been and is now the wife of said Oscar J. Edgren."

Defendant's answer states:

"The defendant denies each and every allegation therein alleged in Paragraph I of plaintiff's complaint, and the whole thereof, and demands the proof thereof, and if the plaintiff married Oscar J. Edgren on December 1, 1933, in Mexico, as claimed

[1] "The court erred in denying the motion for nonsuit."

"The court erred in denying the motion for directed verdict made on the ground that the marriage alleged and relied upon by the plaintiff in her complaint was nonexistent prior to the alleged cause of action in plaintiff's complaint."

"The court erred by failing to give defendant's requested instruction No. 5."

"The court erred in failing to grant defendant's motion for judgment for the defendant notwithstanding the verdict."

> by plaintiff, then said marriage was void, or was terminated, or was dissolved, long prior to July, 1961, and prior to the alleged cause of action in plaintiff's complaint."

Defendant argues that her answer presents new matter not stricken nor denied, and that, therefore, defendant's allegation that the marriage had not continued must be taken as true (ORS 16.620). Based upon those contentions the defendant argues that the complaint fails to state a cause of action.

ORS 16.620 provides:

> "Every material allegation of the complaint, not specifically controverted by the answer, and every material allegation of new matter in the answer, not specifically controverted by the reply, shall, for the purpose of the action, be taken as true * * *."

The definition of "material allegation" appears in ORS 16.610:

> "A material allegation in a pleading is one essential to a claim or defense, and which could not be stricken from the pleading without leaving it insufficient as to such claim or defense."

■ Many of this court's decisions illustrate the application of the definition contained in ORS 16.610 and the consequences of the application of ORS 16.620.®

---

® See e.g. Landberg v. SIAC, 1923, 107 Or 498, 215 P 594.

Fisher v. Kelly, 1896, 30 Or 1, 46 P 146.

McKay v. Musgrove, 1887, 15 Or 162, 13 P 770.

For a ground that might be useful here see the case of Larsen v. Oregon Railroad and Navigation Co., 1890, 19 Or 240, 23 P 974.

Stanley v. Topping, 1914, 71 Or 590, 143 P 632.

Moody v. Richards, 1896, 29 Or 282, 45 P 777.

For a slightly different test see the case of Hannan v. Greenfield, 1899, 36 Or 97, 58 P 888.

We note that the plaintiff alleges that her marriage continued and that the defendant denies that allegation. One may concede, without so deciding, that defendant set forth "new matter," but those averments are not material in the sense of ORS 16.610. The matter might have been stricken without making ineffectual the denial of Paragraph I of the complaint by the answer, or foreclosing proof on the issues of the alleged continuance of the marriage status. The averments upon which the defendant depends merely particularized the grounds for her denial. Not being a material allegation, the failure of the reply to controvert it did not make the plaintiff's pleadings defective. These first four assignments of error are without merit.

██ Defendant's fifth and sixth assignments of error present the issue as to whether there was sufficient evidence to warrant submission of the case to the jury.[9] The elements of the alleged cause of action are wrongful conduct of the defendant, intended to cause and which actually did cause a loss to the plaintiff of the affection and consortium of her husband. *Patterson v. Skogland,* 1947, 181 Or 167, 180 P2d 108. To allow a case of this kind to be submitted to a jury there must be evidence of each element of the cause sufficient to raise a question of fact for the determination of the

For the probable origin of the test as contained in our statute now see the case Whitwill v. Thomas, 1858, 9 Cal 499.

For holdings on particular allegations see:

Benecia Ag. Works v. Creighton & Quivey, 1892, 21 Or 495, 28 P 775.

Haines v. Connell, 1906, 48 Or 469, 87 P 265.

For a case of waiver of the need to reply even where a material allegation is present see Minard v. McBee, 1896, 29 Or 225, 44 P 491.

[9] "The court erred in denying the motion for nonsuit."

"The court erred in denying the motion for directed verdict."

jury. The evidence offered must be viewed in the light most favorable to the plaintiff and a purely speculative inference or conclusion is not substantial evidence. *Anderson v. Sturm,* 1956, 209 Or 190, 303 P2d 509. After a thorough examination of the evidence we have concluded that the record contains evidence which warranted submission of the case to the jury. There is testimony which shows that the defendant made her financial resources available to Oscar in order that he could obtain a divorce from the plaintiff; that the defendant opened a joint bank account with him; that she showered her attentions upon him to the extent that he no longer stayed with his wife, the plaintiff, and did not deposit his earnings in the bank account with his wife as he had done for years previously. The inference that Evelyn, the defendant, intended to and did deprive the plaintiff of the affection, consortium, comfort and right to the society and aid of her husband is at least a permissible one from this evidence.

■ Defendant argues that the plaintiff's testimony to the effect that she was not deprived of the affection and consortium of her husband in the months before they were divorced amounts to a judicial admission by her of facts which destroy any cause of action that she may have had. She cites *Bockman v. Mitchell Bros. Truck Lines,* 1958, 213 Or 88, 320 P2d 266. A quotation from that opinion is instructive. It quotes as follows from *Harlow v. Laclair,* 82 NH 506, 136 A 128:

> " 'If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs, and he will not be concluded by his own statements. * * *' "

Since Bessie's testimony was about the feelings of another, that is, of her husband, the part which the defendant stresses represents a conclusion from objective factors about which she may have been mistaken or deceived. The husband (Oscar) concedes that at that time he was employing deceit upon Bessie. The conclusion under question was exactly the one that the jury draws in a case such at this. Bessie's testimony admittedly is damaging to her cause, but it is not conclusive.

▮ Defendant argues that the divorce decree entered in the suit between the plaintiff and Oscar is conclusive upon the fact of whose fault caused the separation accomplished on November 15, 1961. The decree states that Bessie was at fault. This case for the alienation of affection did not present the same issue as the divorce case. The parties were not the same. The alienation case was not a replay or a retrial of the divorce suit. Even if a wife is having difficulty in retaining the affection of her husband, another woman is not thereby justified in intruding in the matrimonial difficulties and in seeking to alienate the affection of the husband. In this case there is testimony that the decree came as a surprise to the plaintiff, that she did not realize that it had been entered against her and that Oscar, in order to obtain the default decree had deceived Bessie into believing that he would not seek a decree. In addition, Oscar's testimony, while not attacking the decree as final, shows that he perjured himself continuously in order to obtain a decree and marry the defendant. The marriage between Oscar and the defendant occurred the very day that he obtained a divorce from Bessie. We have mentioned that Oscar testified that the defendant provided him with the

money that enabled him to obtain the divorce. He further testified that it was the defendant who suggested, when he showed her the divorce decree, that they proceed forthwith to become married. Oscar's testimony and that of other witnesses somewhat negatives the allegations of the affirmative defense as to defendant's good faith reliance on Oscar's misrepresentations. Analyzing the cause of the divorce is fruitless. Both Bessie and Oscar gave testimony that indicated that their matrimonial relationship had been satisfactory. Even if it were otherwise, the defendant could not rightfully intrude and cause a disruption of the marriage. Therefore, a finding in the divorce decree that Bessie was at fault had no bearing upon the issue as to whether or not the defendant alienated Oscar's affections. There was substantial evidence sufficient to present a question of fact for the jury to determine.

■ Defendant's seventh assignment of error is equally without merit. The challenge here is to the admission of testimony by Oscar as to an odious cause for the annulment in March of 1962 of his marriage to the defendant. Defendant argues that it was error to admit the testimony and that the error was prejudicial. We cannot agree with either contention. The transcript of evidence shows that the defendant interposed an objection to this line of inquiry as not relevant for the reason that if an alienation occurred, it was required to occur before the termination of the plaintiff's marriage to Oscar. The circuit court overruled this objection because this testimony had some relevance to the reason Oscar had obtained a divorce from the plaintiff. The defendant does not contend that that ruling was erroneous. Oscar then testified as to one of the reasons and the defendant's counsel objected that he was going too far afield. This objection was

sustained and the witness was confined to specific reasons. Before Oscar gave the next answer, that is, the one claimed to be prejudicial and to require reversal, plaintiff's counsel approached the bench and warned the court and opposing counsel of the nature of the answer he expected would be given. Defendant's counsel manifested no opposition whatever and the court instructed the witness to answer. Oscar was reluctant to speak of the incident of a rather intimate character but was directed by the court, with no objection from counsel, that he should answer. Oscar then answered without objection from any source. It thus appears that this issue is raised for the first time on this appeal. Thus, we have no ruling to review, and it is clear that there is no error properly before us for consideration.

■ The defendant further assigns as error the failure of the trial court to have excluded a marriage certificate issued by an official in Tijuana, United States of Mexico, as evidence of the marriage which the complaint alleges the plaintiff and Oscar consummated in that country December 1, 1933. Oscar, as a witness for the plaintiff, testified:

"A  I was married December the 1st, 1933.

"Q  And to whom, sir?
"A  To Bessie Strang [plaintiff's maiden name].

"Q  Where did that marriage take place?
"A  In Mexico.

"Q  Did you receive any official acknowledgment of that marriage from the person performing it?
"A  Nothing other than a small certificate."

Thereupon, the certificate was produced and Oscar identified it by saying: "Yes, this is the same docu-

ment." When it was placed before the trial judge, the latter remarked: "I notice the document has fingerprints on it. Was that part of the requirement?" To which Oscar replied: "Yes, they asked us to put our fingerprints on it." The certificate displays the seal of the United States of Mexico, the signature of the "judge" who performed the ceremony, and recites on its face the authority of the "judge" to issue the certificate as evidence of the "Matrimonial Act." When the marriage certificate was offered in evidence, defendant's counsel objected on the basis that "the statutory showing has not been made which is necessary before this instrument can be received."

Upon the subject of their marriage in Tijuana, Mexico, the plaintiff testified:

"Q Were you married in 1933?
"A I was.

"Q Where?
"A In Mexico.

"Q To whom?
"A Oscar J. Edgren.
&ast; &ast; &ast;

"Q Was the marriage ceremony officiated over by either a clergyman or an official?
"A It was a judge, I believe.

"Q And you received a certification or document, which is listed as Plaintiff's Exhibit No. 1, entitled 'Translation United States of Mexico Marriage Certificate.' I ask you if you have seen that document before (proffering exhibit)?
"A Yes, sir.

"Q I ask you if your signature appears thereon?
"A Yes, sir.

"Q I will ask you if your fingerprint appears thereon?
"A Yes, sir.

"Q When was it placed on there?
"A On December the 1st, 1933.

\* \* \*

"Q Now, after this marriage where did you live?
"A We lived in California.

"Q How long?
"A Until 1941, I believe, after Pearl Harbor.

"Q And then where did you go from there?
"A To Portland.

"Q During this period of time had you been separated or divorced —
"A No, sir."

It is clear from the testimony of Oscar and Bessie that they lived together as husband and wife. Bessie took the name of Edgren, a son and a daughter were born to them, and the four constituted a family. Oscar and Bessie had a joint bank account. As we have seen, a marriage certificate was given to them by the official who performed the ceremony and it was preserved by husband and wife. The following is taken from 55 CJS, Marriage, § 44, page 900:

"Testimony by one of the parties to the marriage, or by one of the witnesses to the marriage, has been held to be admissible to prove the fact of marriage. The person who officiated at the solemnization is also competent to testify as an eyewitness to the fact of marriage."

See to the same effect 35 Am Jur, Marriage, § 210, page 318, and Wigmore on Evidence, 3rd edition, § 268. The evidence clearly established that the plaintiff and Oscar became husband and wife through a marriage ceremony performed in Tijuana, United States of Mexico, December 1, 1933.

In October of 1955 the two, in order to remove all doubt concerning their marriage which may have had some basis in the fact that it was solemnized in Mexico, went to Skamania County in the State of Washington and there, on October 8, 1955, underwent another solemnization of their marriage. The certificate of that marriage was likewise received in evidence. No adequate objection was made to the evidence establishing that marriage.

We do not believe that during the course of the trial anyone doubted that Bessie and Oscar were married. The sole doubt that was expressed was concerning the admissibility of the marriage certificate issued by the official in Tijuana, Mexico. In view of the fact that the validity of the marriage was established, we deem it unnecessary to give time to the question whether the certificate itself was admissible in evidence.

The foregoing disposes of all assignments of error. We have found no merit in any of them. The judgment of the circuit court is affirmed.